Plaintiff states two causes of action, in the first of which he alleges negligence of the defendant in failing to furnish a safe place to work. The defendant required the plaintiff to work on a lumber dock, which was about twelve feet above the ground on a frame of studding, which had been floored and a steel rail track laid on top of this flooring, upon *Page 639 
which track a lumber car or truck was operating. Defendant had been shipping lumber from packs alongside of this dock, and had carelessly piled up a lot of lumber and packing strips in a loose way on top of this lumber dock and by the side of the track. The timber in this dock had been permitted to rot, which caused the track upon the same to spread, and the lumber truck to drop down between the rails. In order to get the truck back on the track, it was necessary to prize the same up with timbers, requiring the plaintiff to go around the car on the dock, and to do so he was required to pass over this lumber or packing strips, which slid off to the ground, taking the plaintiff with it, a distance of about twelve feet, when both the bones in his left arm were broken. Plaintiff also alleges an insufficiency of hands to do the work which required him and his coworker to use the scantling for prizing the car back on the rails.
In the second cause of action the plaintiff alleged that he was injured by the malpractice of defendant's doctor, who failed to treat his arm properly and with ordinary skill, and failed to use the right kind of splint, and thus permitted the bones of his arm to become lapped and out of alignment, and thereby his arm was left badly misshaped and was rendered practically useless.
Defendant pleaded a release by the plaintiff, which the latter alleged was fraudulently procured. The other questions in the case will fully appear from the verdict, which, with the answers thereto, is as follows:
"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the first cause of action, as set out in the complaint? Answer: `Yes.'
"2. Did the plaintiff by his own negligence contribute to his own injury? Answer: `No.'
"3. What damage, if any, is plaintiff entitled to recover for and on account of his injury, as alleged in the first cause of action? Answer: `$2,500, less $165.'
"4. Was the signature of the plaintiff and the execution of the contract of release set up in defendant's answer obtained from the plaintiff, McKinley McMahan, through fraud, undue influence, or misrepresentation of the defendant? Answer: `Yes.'
"5. Was the plaintiff at the time of signing the said release a minor, under the age of 21 years? Answer: `Yes.'
"6. Did the defendant engage and employ Dr. D. J. Smith as its physician to treat the plaintiff, as alleged in the complaint? Answer: `Yes.'
"7. Did the defendant negligently furnish an unskilled an incompetent physician and surgeon to give such treatment? Answer: `Yes.' *Page 640 
"8. Was the plaintiff injured by the negligence of the defendant in failing to properly treat plaintiff's injury, as alleged in the complaint? Answer: `Yes.'
"9. What damages, if any, is the plaintiff entitled to recover as the result of negligence, as alleged in the second cause of action? Answer: `$4,000.'"
Judgment was entered on the verdict, and the defendant appealed.
after stating the case: It will be convenient to consider the exceptions in the order of their statement in the record, though they are not so stated in the defendant's brief.
As to the first cause of action, we think there was sufficient evidence of the defendant's negligence for the jury. The defendant was required to exercise due care in furnishing a reasonably safe place for plaintiff to do his work, and this, it is alleged, was not done, as its platform or dock was decayed so that the rails spread and the hand-car fell between the rails. On the day of the injury the car, because of the rotten condition of the dock, fell between the rails, and it was necessary for plaintiff to secure a scantling from the other side of the track in order to prize it back to its place. To do this he was required to go around the car, and while he was walking toward the place where he saw the scantling, he stepped on a pile of lumber which had been taken from the stack and was crossed. It should not have been there, and, besides, it was improperly piled, being crossed instead of straight. He was short of help and had to hurry with his work in order to keep the mill clear of lumber where it would be in the way if allowed to accumulate. He stepped on the lumber and it slipped and slid off and threw him violently to the ground, because it was piled improperly. It should have been piled straight instead of crossed, and should have been in the stack and not on the platform. The question of negligence was properly submitted to the jury by the court, under the rule of the prudent man, and also the question of plaintiff's contributory negligence, and they found against the defendant.
This case does not fall within that class where the employer is allowed to do simple work in his own way, without the necessity of any instructions from his employer, because it is presumed in such a case that the work is safe if properly done by the employee, by the exercise of his own common sense and judgment, there being no complication in the work requiring special instructions from the employer as to how he should *Page 641 
do it. But this rule does not apply if the employer has not furnished a reasonably safe place to do the work, and the employee has been injured by his default in this respect, while in the exercise of due care himself. Whether the master has performed his duty and the servant has performed his, are questions manifestly for the jury to decide. If in this case the defendant furnished a rotten platform or dock for its servant to work on, and insufficient help for him to do the work properly and safely; if in consequence of defendant's failure in this respect, plaintiff was compelled to go around the car on a walk, where lumber was wrongly and carelessly piled, and while in the exercise of care himself, the plaintiff stepped on the pile of lumber which slipped from under him and caused him to be thrown from the platform, and the jury found these to be the facts, and that the injury was proximately caused in this way, and by defendant's failure of duty, the verdict was correct in fact and in law. We must hold that there was some evidence from which the jury could infer the necessary facts showing defendant's negligence, and the same may be substantially said of the defendant's contributory negligence. His Honor put both questions to the jury according to our approved precedents. It was more a question of fact than one of law. The master's duty to furnish a reasonably safe place for the servant to work and proper machinery and other appliances with which he may perform it, is unquestionable. "Where there is evidence tending to show that an injured employee did not have a reasonably safe place to work, . . . the question whether it was such a place, or whether the failure to warn him of the danger was the proximate cause of the injury should be submitted to the jury. Where more than one inference can be drawn, as to the negligence, or the proximate cause, it is for the jury to determine" which inference is the correct one. Holton v. Lumber Co., 152 N.C. at p. 69. Cases bearing on this question are Steeley v. Lumber Co.,165 N.C. 27; Nelson v. Tobacco Co., 144 N.C. 420; Dunn v. Lumber Co.,172 N.C. 129; Marks v. Cotton Mills, 135 N.C. 290; West v. Tanning Co.,154 N.C. 44, and other cases which are cited in Steeley v. Lumber Co.,supra. There was no error in submitting the first cause of action to the jury, especially when the principles of law applicable to the case were so lucidly stated in the charge.
As to the second cause, for malpractice in treating the plaintiff, there can be no question that there was some evidence which tended to establish the charge of unskillfulness in the method of treatment, and a failure to exercise proper care and to make a proper diagnosis. There was undoubtedly sufficient evidence that defendant knew of the incompetency of the physician. The particular allegation is that Dr. Smith, assisted by Dr. Aldredge, failed to place the broken bones in proper alignment, but left them overlapping each other, and without a union between them, *Page 642 
thus shortening the arm about two inches, and leaving it "very crooked and ugly in appearance, and practically useless." As said in Woody v. SpruceCo., 178 N.C. 592 (S. c., 176 N.C. 643), "The defendant owed the duty to the plaintiff, after it had undertaken to secure a doctor for him, to see that he was one of reasonable skill and ability." There was evidence that Dr. Smith was employed and paid from the wages of the employees, upon the assessment plan, to treat them, and the rule just stated, as to defendant's duty in the premises, is the correct one. The evidence of a prior suit to which defendant was a party, and in which he was informed of the physician's lack of skill, was sufficient to charge it with notice of the same on the question of negligence. It was not competent as substantive evidence of the physician's incompetency, nor of negligence itself, but only of notice to the defendant that he was considered as unskillful. Fowlev. R. R., 147 N.C. 491; 4 Chamberlayne on Mod. law of Ev., sec. 3230. The information came to the defendant under oath, and therefore was most solemnly imparted to him; and the jury found that he was incompetent before this transaction. With these facts within its knowledge, the defendant should have proceeded more cautiously. Some latitude is necessarily allowed in proof as to notice or knowledge. It was held in Woody v. Spruce Co.,supra, that while the company was under no obligation to furnish a physician to its employees, when it assumed to do so, the duty arose to exercise due care in selecting him and in continuing him in its service. Several of the exceptions to testimony are so plainly untenable that we forbear any discussion of them.
The deposition of Mrs. McMahan was competent. The judge found as facts that she was sick and unable to attend court, and had been duly served with a subpoena. These findings are binding upon us. Williford v. Bailey,132 N.C. 403; Branton v. O'Briant, 93 N.C. 103; Pell's Revisal, sec. 1645, subsec. 4. There were no written exceptions to the deposition filed. Davenport v. McKee, 98 N.C. 500, at p. 507, and cases cited.
As to the paper containing the ages, including that of the plaintiff, it was, at least, corroborative and was properly admitted on that ground, if for no other reason. It was offered to prove the age of plaintiff, and the want of capacity to execute the release. On the question of fraud in procuring the release, the court's instructions to the jury were fully sufficient, and conformed to our precedents, and the same may be said of the general charge on the second cause of action.
The testimony of plaintiff as to what he told Dr. Smith as to the condition of his arm, when the doctor examined it and changed the splints put there by Dr. West, was clearly admissible as part of the res gestae, and also as explanatory of his physical condition, the statement having *Page 643 
been made to his physician at the time the latter was trying to discover what was that condition. He called the doctor's attention to the knot on his arm bone, and was told that it was not serious, but merely a callous formation on the bone, and that it would be all right, which proved to be untrue; the doctor advised him that he could go back to his work, whereas the arm became so bad, and was so crooked and disfigured, that he was ashamed to exhibit it, even to the doctor who treated it. There was evidence that the arm was not treated according to the approved methods of surgical science, and did not receive the proper attention, and for these reasons it was left in its present condition, and will never improve or return to its normal shape. The court, in the charge, expressly confined the testimony in regard to the Woody suit against the defendant to the question of notice, or knowledge of Dr. Smith's incompetency, and positively instructed the jury not to consider it as substantive evidence of the fact.
The motion to nonsuit was properly overruled. Upon such a motion the testimony must be taken as true (Reid v. Reese, 155 N.C. 230; Woody v.Spruce Co., 176 N.C. at p. 643), and when so regarded, there was ample evidence to support the verdict. In this connection we may well repeat that plaintiff's testimony of how he was hurt, if believed, shows that the lumber on the dock was so carelessly piled as to cause it to give way when he stepped on it; and besides, that kind of lumber did not belong there, but should have been in the stack, and that he did the best he could under the circumstances, not being aware of the trap that was there, though not intentionally set for him. These and other facts of like import, taken in connection with the rotten platform, and the shortage of helpers, made a case of negligence for the jury to find. Plaintiff properly contended that he had the right to assume that his employer had so piled the lumber as not to be unsafe to him while in the performance of his duties, and that he had not needlessly exposed him to danger. Cochran v. Young-Hartsell Mills Co.,169 N.C. 57. The master produced the situation which required the plaintiff to walk over the pile of lumber and was negligent in doing so, but having done it, the servant had the right to assume that he could safely walk to the place where he was required to go for the scantling, or whatever he needed, to prize the car back, especially as there was a lack of necessary help to do the work, according to plaintiff's testimony, which we must believe to be true on the motion of nonsuit. Pigford v. R. R., 160 N.C. 93.
There was evidence of fraud in procuring the release and of a want of consideration. There was actual misrepresentation here, notably as to plaintiff's condition, which was calculated to mislead him and cause him to surrender his right of recovery for a mere song, almost nothing as compared with the extent of his injuries and his real damage. Causey *Page 644 v. R. R., 166 N.C. 5, at p. 10, where it is said (quoting from Hume v.U.S., 132 U.S. 611): "It (fraud) may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under delusion, would make, on the one hand, and as no honest and fair man would accept, on the other. "The charge was plainly correct as to the burden of proof. Woody v. Spruce Co., 178 N.C. 592, 593 (S. c.,176 N.C. 644). No damages were claimed after 1 December, 1917, and the judge instructed the jury not to award any, which resulted from any treatment of Dr. Smith after that date, as the defendant was protected against any such award of damages by its contract with the plaintiff. The charge was correct as to the other damages, when the entire charge is considered.
We are of the opinion that the jury did not give any damages because of anything Dr. West did, as it appears that his treatment was satisfactory according to plaintiff's own testimony, and from all that appears, he was competent and capable. The injury done was attributable to Dr. Smith's advice and treatment of the arm. The plaintiff testified that its appearance was good when he returned from the hospital, and the arm was straight. The splints were removed by Dr. Smith and twice replaced with others by him, and it was then and thereafter the damage was caused. We can see nothing to lead us to believe that any part of the recovery was due to Dr. West's conduct, or treatment, and therefore the reference to him, even if improper, was not prejudicial, and was practically harmless. It is not ground for a reversal. S. v. Bailey, 179 N.C. 724. Besides, the issues themselves restricted the inquiry to damage caused by Dr. Smith's incompetency. The jury surely understood its scope.
We have examined this case with great care, and close attention, and can find no reversible error. The objections to the judge's statement of the contentions fall within the usual rule that any error therein, if any, was not called to the judge's attention, as it should have been, in proper time so that he could correct it. Sears v. R. R., 178 N.C. 285; Hall v.Giessell, 179 N.C. 657. The numerous exceptions have extended this opinion beyond our expectation.
As we find no error, it will be so certified.
No error. *Page 645