Action to recover damages for personal injury sustained by plaintiff, while engaged in work as an employee of defendant.
In response to issues submitted by the court, the jury found that plaintiff was injured by the negligence of defendant as alleged in the complaint; that plaintiff did not by his own negligence contribute to his injury as alleged in the answer, and that plaintiff did not assume the risk of his injury, when he contracted with defendant for his employment, as alleged in the answer.
In bar of plaintiff's recovery, in this action, defendant set out in its answer, and relied upon a release in writing, executed by the plaintiff, prior to the commencement of this action, upon the payment to him by the defendant of the sum of $500, of any and all causes of action which plaintiff had against the defendant, at the date of the release, or which he might have thereafter, by reason of his injury.
Plaintiff admitted the execution by him of the release set out in the answer, and the payment to him by defendant of the sum of $500, as the consideration for said release. For the purpose of avoiding said release, plaintiff alleged in his reply that he was induced to execute the same by the false representations of the physician employed by defendant, who operated on his injured arm, "that said arm had sustained an ordinary break, and that the operation which had been performed on said arm by said physician, was successful, that said arm was then on the road to complete recovery, and that plaintiff would be able to perform his usual physical labors within the course of eight or ten weeks from the date of the injury."
In response to issues submitted by the court the jury found that the release was procured by fraud, or misrepresentation as alleged in the reply of plaintiff, and that plaintiff is entitled to recover of defendant as damages resulting from his injury the sum of $2,000.
From judgment on the verdict that plaintiff recover of the defendant the sum of two thousand dollars, defendant appealed to the Supreme Court.
Plaintiff, who is about 22 years of age, was injured while at work for defendant, at a fabric machine, on 11 April, 1928. He was taken immediately after his injury to a hospital, where his injured arm was treated by Dr. Hipp, a physician, who was employed for that purpose by the defendant. Plaintiff remained in the hospital, under *Page 125 
the professional care of Dr. Hipp, from 11 April to 24 April, 1928. Dr. Hipp, in response to plaintiff's inquiry, told him that his injury was not permanent; that his arm would be all right within eight or ten weeks — well enough for plaintiff to return to his work.
After plaintiff was discharged from the hospital, but while he was still under the professional care of Dr. Hipp, he entered into negotiations with the attorney of defendant for the settlement of his claim for damages. Plaintiff declined to accept the sum offered by said attorney and employed an attorney at law, as his counsel to advise him with respect to the settlement of his claim against defendant. He made a full statement to his counsel of the circumstances under which he was injured and also as to the extent of his injury. He told his counsel that he had been advised by Dr. Hipp that his injury was not permanent and that his arm would be well enough within eight or ten weeks for him to return to his work. As a result of further negotiations between plaintiff and his counsel, and the attorney for defendant, it was agreed that defendant should pay to plaintiff, in full settlement of his claim for damages the sum of $500, and that plaintiff should execute the release, which was read to plaintiff by his counsel. During these negotiations the attorney for the defendant showed to plaintiff and his counsel a letter from Dr. Hipp to the defendant, in which Dr. Hipp advised defendant that plaintiff's injury was not permanent, and that plaintiff would be able to return to his work within eight or ten weeks from the date of the injury. Plaintiff and his counsel relied upon the opinion of Dr. Hipp, expressed both to plaintiff and to defendant, as to the extent of plaintiff's injury. On 4 May, 1928, in the presence of his counsel, and upon his advice, plaintiff executed the release set out in defendant's answer, and accepted from defendant the sum of $500, as the consideration for said release.
After the execution of the release by plaintiff, and prior to the commencement of this action, it developed that plaintiff's injury is permanent; he was not able, because of his injury, to return to his former work, or to do work equally as remunerative as his former work, at the expiration of ten weeks from the date of his injury. The bones in plaintiff's broken arm made a good union, but there was a nerve involvement which, notwithstanding several operations on plaintiff's arm, has rendered his arm practically useless to him. None of the operations was successful. Plaintiff's surgeon, as a witness in his behalf, expressed the opinion that no treatment, surgical or otherwise, could restore his arm to its former strength; that his injury is permanent. The jury found from evidence, to which there was no objection, and under instructions of the court, to which there was no exception, that plaintiff has sustained damages, as the result of his injury, in the sum of $2,000. The only question presented for decision by defendant's motion, at the close of the *Page 126 
evidence, for judgment as of nonsuit, was whether there was evidence tending to show that the release executed by plaintiff was procured under circumstances which render said release ineffectual as a bar to plaintiff's recovery of damages in this action. The defendant assigns as error upon its appeal to this Court the refusal of the court to allow its motion.
There was no evidence tending to sustain the contention of plaintiff that the release was procured by fraud. It is doubtful whether there are allegations in the complaint sufficient to raise an issue of fraud in the procurement of the release. But conceding that the facts alleged in the complaint are sufficient to raise such issue, we are of the opinion, and so decide, that there was a want of evidence tending to show that the release was procured by fraud. The evidence shows that the negotiations for a settlement of his claim against the defendant for damages, were begun after the plaintiff had left the hospital, and that these negotiations were initiated by the plaintiff, and not by the defendant. The facts in this case, as shown by all the evidence, with respect to the circumstances surrounding plaintiff, at the time the settlement was made and the release signed, differentiate this case from Butler v. Fertilizer Works,193 N.C. 632, 137 S.E. 813. In that case the negotiations for a settlement of the injured employee's claim for damages against the defendant, were begun by its agent, and the release was procured while such employee was confined in the hospital, and before he had recovered from the shock resulting from his injury. Plaintiff did not read the release, before he signed it, and there was evidence tending to show that its contents were misrepresented to him by the agent of the defendant. At the time the release was signed, plaintiff was without the aid or advice of friends or counsel. In the instant case, the negotiations which resulted in the settlement of plaintiff's claim, and the execution by him of the release, were begun by the plaintiff, and were conducted for him by an attorney at law, retained by him for that purpose. The good character and high professional standing of this attorney at law is conceded.
Although the jury has found that plaintiff has suffered damages in the sum of $2,000, by reason of his injury, it cannot be held that the sum of $500, paid to plaintiff by defendant, in settlement of his claim, before the commencement of this action, was grossly inadequate, and that therefore this fact alone is evidence of fraud. In Knight v. Bridge Co., 172 N.C. 393,90 S.E. 412, it is said that "the controlling principle established by our authorities is that inadequacy of consideration is a circumstance to be considered on the issue of fraud, and that if it is so gross that it would cause one to say that nothing was paid, it would be sufficient to be submitted to the jury without other evidence; but we have not said that a contract could be set aside as a matter of law because of gross inadequacy." It is only when the consideration for the contract is *Page 127 
so grossly inadequate as to cause general comment that nothing was received by the party against whom the contract is alleged to be conclusive, that such consideration alone is sufficient evidence that the contract was procured by fraud. The payment of $500, in settlement of an unliquidated claim for damages, before liability has been established, and without the delay and expense necessarily incident to litigation, is not grossly inadequate, although the damages are thereafter assessed by a jury, in an action involving issues of liability as well as an issue of damages, at $2,000. In the instant case, the evidence shows that defendant paid to plaintiff, not only the sum of $500, but also all expenses incurred by him, both before and after the execution of the release, for hospital and surgical services, required because of his injury.
The fact as shown by the evidence that plaintiff and his attorney relied upon the representations made to both the plaintiff and the defendant, by Dr. Hipp, the physician employed by defendant to treat plaintiff's injured arm, with respect to plaintiff's recovery from his injury, was not sufficient to avoid the release. Both plaintiff and his attorney understood from the very nature of the representations that they were based upon the opinion which Dr. Hipp had formed of the extent and character of plaintiff's injury. There was no evidence tending to show that the representations were not made in good faith, upon an opinion honestly formed, after a skillful treatment of plaintiff's injured arm by Dr. Hipp. There was no evidence tending to show that the representations as to his opinion with respect to plaintiff's recovery from his injury, were made by Dr. Hipp to induce plaintiff to settle his claim against the defendant for damages. There was no evidence tending to show a misrepresentation by Dr. Hipp as to the condition of plaintiff's arm, at the date of the representation; all the representations were as to the future. All the evidence shows that Dr. Hipp is a highly reputable physician, residing in the city of Charlotte, N.C.; that as the result of his treatment of plaintiff's broken arm, there was a good union of the broken bones, and that the condition of plaintiff's arm at the time of the trial is due to a nerve involvement which was discovered after the date of the release. When plaintiff accepted the sum of $500, in settlement of his claim against defendant for damages, and executed the release, before the expiration of the time within which Dr. Hipp advised him that he would be able to return to work, he did so at his risk, that his damages might exceed the sum voluntarily paid by defendant.
In McMahan v. Spruce Co., 180 N.C. 636, 105 S.E. 439, there was evidence of an actual misrepresentation of plaintiff's condition, resulting from his injury, by the physician who was employed by defendant to treat his injury. There was also evidence of fraud in procuring the *Page 128 
release and a want of consideration therefor. It was held that the evidence was properly submitted to the jury. The decision in that case is not authoritative in the instant case.
It has been repeatedly held by this Court that a release executed by an injured party, and based on a valuable consideration, is a complete defense to an action for damages for the injuries. It is only when it is alleged and established by evidence that the release was procured by fraud, or duress, or oppression that it can be avoided. In the instant case, we find no evidence upon which the plaintiff can be relieved from the terms of his contract with defendant, that upon the payment to him of the sum of $500, he would release defendant of any and all causes of action which he had, or which he might thereafter have, against defendant for damages by reason of his injury sustained on 11 April, 1928. Plaintiff having chosen to settle his claim before the full extent of his injury had been ascertained, thereby taking the risk that his damages might exceed the sum paid to him in settlement of his claim, must abide his contract. He has failed to show any facts upon which this Court, which has been jealous of the rights of injured employees to damages for which the employer is liable, may relieve him of the effect of his contract. The judgment must be
Reversed.