AMERICAN POTATO COMPANY v. JENETTE BROTHERS.

(Filed 13 September, 1916.)

**1. Contracts, Written—Clearly Expressed—Parol Evidence.**

Where the terms of a written contract are therein clearly and unambiguously expressed, and there is no allegation or evidence of fraud or mutual mistake, they will be enforced as they are written, and parol testimony, contradictory thereof, is inadmissible.

**2. Same—Prior Negotiations.**

Evidence of negotiations leading up to the making of a contract which the parties have afterwards put in writing is incompetent to contradict the clearly and unambiguously expressed terms of the written contract, for the previous negotiations merge therein.

**3. Same—Common Understanding.**

The common understanding between the parties is gathered from their written contract, and where this has been clearly and unambiguously expressed it is incompetent to show, in contradiction, what one of them understood the contract to be.

**4. Contracts, Written—Equity—Correction—Parol Evidence—Pleadings.**

The question whether parol evidence is competent in equity to correct a written contract in accordance with the true agreement of the parties does not arise in the absence of allegation and evidence of fraud or mutual mistake of the parties. It is competent to reform a deed, but not to vary or contradict it.

**5. Contracts, Written—Enlargement—Parol Evidence—Trials—Issues.**

In vendor's action upon his contract to furnish the purchaser with the best potatoes of a certain kind he shipped his customers

1—172

"from Aroostook County in the State of Maine" it is reversible error for the court to submit to the jury an issue upon the purchaser's liability controlling the question whether the potatoes furnished were the best raised in and shipped by any one from that county in the same year, for this enlarged the obligations of the vendor beyond those stated in the contract. There was no issue in this case as to whether the potatoes were worthless or unfit for the purposes for which they were sold.

APPEAL by plaintiff from *Cooke, J.,* at November Term, 1915, of PAS-QUOTANK.

Plaintiff sued to recover damages for a breach of contract in the sale of potatoes. It was agreed between the parties that on 25 October, 1912, plaintiff would sell and deliver at Elizabeth City, N. C., 1,000 sacks of potatoes, known in the trade as Irish Cobbler and White Bliss, at $2.90 per sack of 11 pecks, the same to be sacked and shipped between 1 January, 1916, and 28 February, 1916, in cars of 250 sacks each, upon receipt of a written order of shipment from the defendants two weeks before the first named date, the potatoes "to be the best quality shipped from Aroostook County, State of Maine, by the said first party (plaintiff in this case), and in sacks of 165 pounds each, net; the same now being stored in warehouses in Maine which are owned and operated by the said party." There was a further stipulation as to the price and the payment thereof by stated installments.

Defendant alleged, and offered proof to show, that plaintiff failed to comply with this contract, in that instead of shipping potatoes of the quality described in their agreement, "it had shipped a bad lot of potatoes, being anything that grows in potato fields, from the smallest culls to the largest, being mixed and of three different kinds, the smallest being the size of a turtle egg and some as large as a cocoanut."

Plaintiff tendered issues based on the terms of the contract, which the court rejected, and submitted issues which, with the answers of the jury thereto, are as follows:

"1. Was the plaintiff ready, willing, and able to deliver to the defendants 580 bags of Cobblers and 180 bags of White Bliss Irish potatoes, the best quality shipped from Aroostook County in 1913? Answer: 'No.'

"2. Did defendants wrongfully refuse to take the potatoes and pay for same? Answer: 'No.'

"3. What damages, if any, is plaintiff entitled to recover? Answer: 'Nothing.'"

The court admitted evidence, over plaintiff's objection, as to correspondence and dealings between the parties prior to the execution of the written contract of 25 October, 1912, and as to the quality of the potatoes defendants had purchased from the plaintiff in 1912; and also oral evidence as to the kind and quality of potatoes the defendants contracted to buy, which were to be good, medium size, smooth, and bright.

There was no evidence as to the kind or quality of potatoes which were shipped from Aroostook County, Maine, by the plaintiff in 1913, and plaintiff asked for an instruction based upon this lack of evidence, which was refused.

Judgment was entered upon the verdict, and plaintiff, having reserved all exceptions taken during the trial, appealed to this Court.

*George J. Spence, Aydlett & Simpson for plaintiff.*
*Ehringhaus & Small for defendant.*

WALKER, J., after stating the case: The parties had the legal right to make their own contract, and if it is clearly expressed, it must be enforced as it is written. We have no power to alter the agreement, but are bound to interpret it according to its plain language. There is no rule of evidence better settled than that prior negotiations and treaties are merged in the written contract of the parties, and the law excludes parol testimony offered to contradict, vary, or add to its terms as expressed in the writing. *Moffitt v. Maness,* 102 N. C., 547. The principle lies at the very foundation of all contracts, and if permitted to be· violated the ultimate injury to the commercial world and to society generally would be incalculable and certainly far-reaching. It is unfortunate that loose dicta in occasional and ill-considered cases are to be found which seem to be hostile to this safe and sound axiom of the law, because they have strained the law in order to defeat or circumvent some suspected fraud, perhaps gross and vicious; but the method of preventing the consummation of the wrong will be far more disastrous in its results than a steady adherence to the rules of the law, although in special cases actual imposition or fraud may be perpetrated. The rules of law are and must needs be universal in their application, this being essential to certainty in business transactions and to the integrity of contracts; for, otherwise, "commerce may degenerate into chicanery and trade become another name for trick." *Benwick v. Benwick,* 3 Harris, 66. It is true that Cicero in his eloquent defense of the poet Archias denied the superiority of the record, or the written memorial, over the spoken word, upon the ground that the witness is subjected to an oath and cross-examination, with other safeguards against falsehood, while the record has no such test to assure its accuracy; but his plausible argument has never been accepted by the wiser sages of the law, who have consistently adhered to the safer rule and so arranged the degrees of proof as to give decided preference to written over unwritten evidence. *Chief Justice Taylor,* in referring to this view of the law, expressed the belief that the fallibility of human memory weakens the effect of oral testimony to such an extent that even the most upright mind, though awfully impressed with the solemnity of an oath, perfectly honest and sincere in

its processes, and aiming solely at a disclosure of the truth, may still err, and thereby unconsciously substitute falsehood for it. He said that "Time wears away the distinct image and clear impression of facts and leaves in the mind uncertain opinions, imperfect notions, and vague surmises." It is better, therefore, to rely upon the written word, as less apt to deceive or falsify. *Smith v. Williams,* 5 N. C., 426.

Nor can this beneficent rule be evaded by substituting the understanding of one party for the agreement of both. The minds of the parties must have met at the same time, and with a common understanding, upon the same subject-matter; and when the agreement is reduced to writing it is conclusively presumed to state that common understanding, and to be their last expression and the chosen memorial of what the contract shall be. We said in *Lumber Co. v. Lumber Co.,* 137 N. C., at p. 436 : "It is not the understanding, but the agreement, of the parties that controls, unless that understanding is in some way expressed in the agreement. Even if the defendant had clearly shown that it so understood the agreement, it will not do, as the court proceeds, not upon the understanding of one of the parties, but upon the agreement of both. No principle is better settled." *Brunhild v. Freeman,* 77 N. C., 128. (*Pendleton v. Jones,* 82 N. C., 249; *Prince v. McRae,* 84 N. C., 674; *McRae v. R. R.,* 88 N. C., 534; *King v. Phillips,* 94 N. C., 558; *Bailey v. Rutjes,* 86 N. C., 520.)

There is no contention here, and could not be, that any part of the contract rested in parol, for the rule in respect to such cases is thoroughly settled, that "Where the contract lies partly in parol, that part which is in writing is *not* to be contradicted." *Moffitt v. Maness,* 102 N. C., at pp. 461, 462, and cases there cited. When parol evidence is admitted to show that all of the agreement was not inserted in the writing, "it does not contravene this rule, but the competency of the proof rests upon the idea that the writing does not contain the whole contract, but is only one part of it." *Ray v. Blackwell,* 94 N. C., 10; *Manning v. Jones,* 44 N. C., 368; *Sherrill v. Hagan,* 92 N. C., 345; *Cummings v. Barbee,* 99 N. C., 332; *Twidy v. Sanderson,* 31 N. C., 5; *Daughtry v. Booth,* 49 N. C., 83, and *Moffitt v. Maness, supra.*

With reference to oral proof of a collateral contract, the law is well understood. It was said by us in *Evans v. Freeman,* 142 N. C., 61, 64, that "Where a contract does not fall within the statute, the parties may, at their option, put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided, varied, or contradicted, by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes one entire contract. In such a case there is no viola-

tion of the familiar and elementary rule we have before mentioned, because in the sense of that rule the written contract is neither contradicted, added to, nor varied; but, leaving it in full force and operation as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its completeness, the same as if all of it had been committed to writing."

Insisting on the strict enforcement of the rule excluding parol evidence where the meaning is clear, we said in *Cobb v. Clegg,* 137 N. C., at p. 157: "The defendant's counsel, on the contrary, argued that the above stated rule, upon which plaintiffs rely, does not apply to the facts of this case, and that parol evidence is not competent, as its effect will be, not to prove an independent part of the agreement which was not reduced to writing, but to vary and contradict the contract as written by the parties, and which the law presumes contains all the provisions by which they intended to be bound. In support of their view they cited *Parker v. Morrill,* 98 N. C., 232; *Meekins v. Newberry,* 101 N. C., 17; *Bank v. McElwee,* 104 N. C., 305, and especially relied on *Moffitt v. Maness,* 102 N. C., 457, in which the Court, through *Shepherd, J.,* admonishes us that the rule against the admissibility of parol testimony to vary the terms of a written instrument has perhaps been relaxed too much, and that the farthest limit has been reached in admitting such testimony, beyond which it will not be safe to go. The Court sounds the alarm and warns us against the dangers ahead. It may be better, we admit, to trust to the writing—the memorial selected by the parties for preserving the integrity of their treaty—than to confide in human memory for the exact reproduction of the facts."

The authorities relied on by the defendants all relate to a case where the terms of the written instrument in question are ambiguous. It is competent in such a case to consider internal as well as external matters in order to ascertain the meaning of the parties. This is very far from saying that you may vary or contradict a written contract by parol, but, on the contrary, it merely allows you to make plain what is uncertain by reason of the language employed. *Wilkie v. N. Y. L. Ins. Co.,* 146 N. C., 513; *Neal v. Camden Ferry Co.,* 166 N. C., 563. This contract is not within that rule of evidence, for it is manifest what its meaning is. The correct rule applicable here is the other one, stated by defendants, which declares that "The one purpose of a written contract is to make certain what the contract is," *Bridgers v. Ormand,* 153 N. C., 113, and as again expressed in defendant's brief, "The intention of the parties as embodied in the words they have used is the true principle in the consideration of all contracts," citing and quoting from *Kirkman v. Hodgin,* 151 N. C., 588; *Edwards v. Bowden,* 99 N. C., 79, 80.

Applying these familiar principles to the facts of this case, we are led to the conclusion that the court erred in the trial of this cause. The contract here calls for potatoes from plaintiff's stock as good as any sold by *it* to others from Aroostook County in the State of Maine. In other words, the plaintiff was to fare as well as defendant's most favored customer; but they were not entitled, by the terms of the agreement, to potatoes of a better quality than were sold to others from said stock, nor to potatoes of as good a kind and quality as sold by any other dealer *from* that county. If we should so hold, we would enlarge the terms of the contract and read into it a material and important stipulation not appearing therein. This would be making a contract for the parties, and not merely declaring the meaning of the one they have made for themselves, which we are not permitted to do. The issue, therefore, was broader than the obligation of the contract, as expressed in it, and consequently required more to be done by the plaintiff than it had undertaken to do for the consideration stated; and the same may be said of the evidence admitted against plaintiff's objection. The ruling allowed defendants to defeat the recovery upon the true contract by increasing the measure of plaintiff's responsibility, or, in other words, the issue and evidence handicapped the plaintiff at the very outset, by trying the case on the wrong theory, and one not consistent with the contract declared on, and utterly foreign to the case.

It is not suggested, by proper pleading, that there was any fraud or mutual mistake in drawing the contract, by reason of which the true intention was not expressed. Where there is such an equity, the real agreement can be shown by oral proof, because this is not varying or contradicting the written agreement, but merely showing what it was intended, by the parties, to be, for the purpose of reforming it, in order that it may be made to speak the truth.

We must not be understood as holding that plaintiff could fulfill its obligation to sell as good seed potatoes as it shipped to others from Aroostook County by sending to defendants a lot of potatoes which were worthless and wholly unfit for the use to which it was intended, with its knowledge, they would be applied. But the case was tried upon no such theory, and we do not pass upon that feature of it. Even if it had been, the form of the issue and the nature of the proof were not germane to it. So that, in any view we may take of the trial, there was error.

New trial.