BARNHILL, J., dissenting.
DEVIN and SEAWELL, JJ., concur in dissent.
Civil action to recover damages for an alleged negligent injury.
On the night of 2 March, 1943, the plaintiff sustained a hernia while working for the defendant in its roundhouse at Spencer, N.C. He was *Page 93 
assisting the engine carpenter in installing a 400-pound coupler in the front of an engine. It is in evidence that ordinarily three men, and sometimes four, were used in the installation of such a coupler, and that on this particular occasion, the engine was not flush with the roundhouse floor, as was customary, making it necessary to place a board over the repair pit in front of the engine to give the plaintiff a footing while assisting in the work. Plaintiff states that his foot or the board slipped and he felt a sharp pain "shoot up" through his side. On examination, the defendant's surgeon, Dr. McKenzie, pronounced it hernia.
It is alleged that defendant's negligence consists in failing to exercise due care to furnish the plaintiff a safe place to work and sufficient help to do the work. Pigford v. R. R., 160 N.C. 93,75 S.E. 860.
In a few days the plaintiff gave the defendant's claim agent a written statement concerning his injury. About ten days thereafter the claim agent again saw the plaintiff, who was still at work, and told him the Company agreed with Dr. McKenzie that he needed an operation and that they would bear the expense as was their custom in such cases, but that they would not pay for any loss of time. Plaintiff protested that he could not afford to lose the time necessary for an operation.
Later in the month, on 29 March, 1943, the defendant's claim agent had another conversation with the plaintiff, at which time he signed a paper-writing agreeing to release the defendant from all liability, in consideration of which, it was stipulated: "The Southern Railway Company will pay all doctor and hospital bills in connection with a hernia operation growing out of the above mentioned personal injuries." . . . (Signed) "W. M. Harrison (Seal)."
Before signing the release, however, plaintiff says he was led by defendant's agent to believe that he was only signing a paper which would admit him to the hospital, and that he was deceived and misled in the matter. "I signed the paper believing it was a form to get me in the hospital. I can read but I didn't read it. I didn't have the opportunity. Mr. Barnett told me what he was fixing."
On several occasions thereafter, plaintiff says the defendant's agent renewed his luring statements and misleading promises, and agreed with him that he was entitled to compensation. The plaintiff has had four operations for hernia but is still suffering from his injury.
The pleadings join issue on negligence, the foregoing release, and the statute of limitations.
At the close of plaintiff's evidence, there was a judgment of nonsuit, from which this appeal is prosecuted.
The question for decision is the correctness of the nonsuit.
The record discloses that the plaintiff is a man of business experience, 32 years of age and literate. He says that prior to entering the employ of the defendant, he was "in the fish and oyster business for 10 or 12 years in a big way. . . . I have had experience in making out sales tickets and collecting money in business." He is now in the wholesale oyster business at Salisbury.
Plaintiff began work with the defendant as an engine-carpenter helper in its repair shops at Spencer around the first of the year 1942. On 2 March, 1943, he suffered an injury. Thereafter, on 29 March, 1943, he signed a release and remained in the employ of the defendant until 3 March, 1946. This suit was instituted 28 February, 1946, three years, lacking one day, from date of accident.
The plaintiff, on his examination in chief, states that before signing the release, the defendant's agent, after receiving instructions from Washington, told him "that where a man gets ruptured on the job," the Railroad "would just pay the doctor and hospital bills — that they would not pay any loss of time." Plaintiff protested that he could not afford to lose the time which an operation would entail, and after several interviews the agent finally said: "Well, like I told you before, this is just all that they will do and it is a practice they have been going through for 20 years and they are not going to change it in your case. Now, if you want to go in here and complete filling out the form, we will fix it."
With this knowledge and information, the plaintiff signed the release without reading it, and accepted its benefits for nearly three years thereafter. It is stipulated that the defendant "has paid a total of $680.70 for surgeon and hospital fees in connection with four operations on the plaintiff for hernia."
Before going to Richmond for the fourth operation on 24 August, 1945, the plaintiff consulted an attorney. He says: "I had legal advice . . . before I went through the fourth operation." Pass v. Rubber Co.,198 N.C. 123, 150 S.E. 709.
The conversations between plaintiff and defendant's agent, subsequent to the signing of the release, were stricken as impertinent on the issue of fraud in the procurement of the release. Certainly the plaintiff understood when he signed the release that all he would get was his surgical and hospital bills in keeping with the general practice of the defendant, since the question of further compensation was at issue and debated at the time.Supply Co. v. Watt, 181 N.C. 432, 107 S.E. 451. This central fact, which the release confirms, was not changed or modified retroactively by subsequent conversations with the claim agent, whose limited authority in the premises was known to the plaintiff. Fraud is a matter of prior intent and present purpose, rather than subsequent *Page 95 
reflection or afterthought. Laundry Machinery Co. v. Skinner, 225 N.C. 285,34 S.E.2d 190; Kemp v. Funderburk, 224 N.C. 353,30 S.E.2d 155; Ward v. Heath, 222 N.C. 470, 24 S.E.2d 5; Stone v.Milling Co., 192 N.C. 585, 135 S.E. 449; 23 Am. Jur., 771. It is the luring bait or that which induces or enters into the transaction as a corroding influence. Furst v. Merritt, 190 N.C. 397, 130 S.E. 40;Ebbs v. Trust Co., 199 N.C. 242, 153 S.E. 858; 37 C. J. S., 204. "Fraud is the egg that spoils the omelet" — MacRae.
Speaking to a like situation and a similar release in Presnell v. Liner,218 N.C. 152, 10 S.E.2d 639, it was said: "If the plaintiff did not read the release before he signed it, this fact cannot avail him unless prevented from so doing by the defendants. He could read; it was his duty to read the instrument before executing it, Aderholt v. R. R., 152 N.C. 411,67 S.E. 978, unless prevented." It is not contended that plaintiff was prevented from reading the release before he signed it. "He is charged, therefore, with knowledge of its contents." Aderholt v. R. R., supra. The duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity. Colt v. Kimball, 190 N.C. 169,129 S.E. 406; Potato Co. v. Jenette, 172 N.C. 1, 89 S.E. 791.
It is established by the decisions on the subject that one who signs a written instrument, without being induced thereto through fraud or deception, cannot avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents, but relied upon what another said about it. School Com. v. Kesler, 67 N.C. 448; 45 Am. Jur., 683; Anno. 55 Am. St. Rep., 509. It is the duty of one signing a written instrument to inform himself of its contents before executing it, if he have the ability and opportunity to do so, and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it. 96 A.L.R., 995. He cannot invoke his own heedlessness to discredit his solemn release, and then call that heedlessness someone else's fraud.Shaffer v. Cowden, 88 Md. 394,41 A. 786.
It is true, the plaintiff says he "didn't have the opportunity" to read the instrument. He had the opportunity to sign it, to see that it was a sealed instrument, and a like opportunity to read it, or have it read, so far as the record discloses. But what is equally important, the plaintiff got what he understood he was to get, and no more, at the time. In this, he was not deceived or misled. Harding v. Ins. Co., 218 N.C. 129,10 S.E.2d 599. Knowledge on the part of the representee forestalls deception. Cox v. Johnson, 227 N.C. 69, 40 S.E.2d 418; 23 Am. Jur., 943; 12 Am. Jur., 630. One cannot be deceived by that which he knows. Cox v. Johnson, supra. *Page 96 
Moreover, there is no evidence that the description of the instrument by the defendant's agent as "a paper which would admit him to the hospital" was either false or misleading within the meaning and understanding of the parties. They had been debating for two or three weeks whether plaintiff would sign the paper in order to obtain a herniotomy and hospitalization at the defendant's expense. He knew that this was all he was to get and that such was the purpose in executing the paper. It did admit the plaintiff to the hospital, not once but four times, at the expense of the defendant.
The plaintiff does not allege that he signed the release under any misapprehension as to its contents. The representation as alleged in the reply is, that plaintiff "would only be admitted to the hospital at defendant's expense unless plaintiff executed a form which was the release mentioned in said answer." So it is alleged that plaintiff signed the very paper which he intended to sign, and he knew it was "the release mentioned in said (defendant's) answer." This dispenses with any fraud in the factum.Furst v. Merritt, supra. There is no allegation of any fraud in the treaty. Indeed, it may be doubted whether the allegation of fraud is sufficient to raise an issue in respect thereof.
The evidence is insufficient to avoid the release on the ground that plaintiff's hernia did not yield to treatment as readily as was though or anticipated at the time. Annotations 48 A.L.R., 1464, and 117 A.L.R., 1022, et seq.
There is no debate over the law of the case, but only as to the proper interpretation of the record.
The record supports the judgment of nonsuit.
Affirmed.