ERNEST ISLEY AND WIFE JARONIA ISLEY v. PERRY BROWN.

(Filed 20 January, 1961.)

**1. Reformation of Instruments § 2—**

In order to reform a deed absolute on its face into a mortgage or security for a debt, plaintiff must show by clear, cogent and convincing proof that the clause of redemption was omitted by reason of ignorance, mistake, fraud or undue advantage and must establish this conclusion by evidence *dehors* the deed.

**2. Fraud § 5—**

A party who signs an instrument without reading it may not thereafter assert his ignorance of its contents, due to his own heedlessness, as fraud on the part of the other contracting party unless he is prevented from reading the instrument by some trick, artifice or misrepresentation.

**3. Reformation of Instruments § 10—**

In an action to reform an absolute deed into a mortgage, plaintiff's evidence to the effect that he signed the instrument without reading it, that defendant had agreed to take over the existing mortgage on the property and permit plaintiff to repay the money in monthly installments, without any evidence that defendant misrepresented the contents of the instrument or did anything to prevent plaintiff from reading it, and without allegation or evidence that the clause of redemption was omitted by mistake, is insufficient to be submitted to the jury.

APPEAL from *Preyer, J.,* at April 4, 1960 Civil Term, of GUILFORD.

Civil action by plaintiff to convert a deed, absolute on its face, into a security for debt.

The plaintiffs are husband and wife, and prior to 1953 owned a house and lot in Greensboro, North Carolina, known as 312 Huffman Street. In March of 1953 the Home Federal Building & Loan Association was in the process of foreclosing a deed of trust upon said property,— the indebtedness secured thereby being in default. The male plaintiff contacted the defendant about the approaching sale, and the plaintiff testified that the defendant agreed to take over the mortgage and allow him to repay the money in monthly installments. On the other hand defendant contends that plaintiff Isley offered to sell him the property, and that he agreed to buy it and that he paid the plaintiff $100.00 for his equity of redemption.

The plaintiff testified that he and his wife signed the deed, but that he did not read it and that he did not know it was a deed. The plaintiff further testified that he and the defendant were complete strangers before the incident complained of herein.

After the signing of the deed, plaintiffs lived in the house at 312

Huffman Street a few months and paid rent to defendant's rental agent. Thereafter they were served with notice to vacate for repairs and never were able to get back into the house.

At the close of plaintiffs' evidence defendant moved for judgment as of nonsuit and aptly renewed the motion at the close of all the evidence. The case was submitted to the jury on these issues, which the jury answered as shown:

"1. Did the defendant obtain the deed to the property at 312 Huffman Street by reason of the ignorance or mistake of the plaintiffs, the fraud of the defendant, or undue advantage of the plaintiffs taken by the defendant? Answer: Yes.

"2. Did the plaintiffs intend that the property at 312 Huffman Street was to serve as security for a loan advanced them by the defendant rather than that it was to belong to the defendant outright? Answer: Yes.

"3. Are the plaintiffs entitled to have the property at 312 Huffman Street deeded back to them? Answer: Yes.

"4. What amount, if any, are the plaintiffs entitled to receive from the defendant in addition to return of their property? Answer: $1,500.00."

As to the fourth issue the lower court, in its judgment, held that the plaintiffs were entitled only to $641.17.

To the judgment entered in accordance therewith both parties object and except and appeal to the Supreme Court, and assign error.

*Hoyle, Boone, Dees & Johnson for defendant.*

*Smith, Moore, Smith, Schell & Hunter, David McK. Clark for plaintiff.*

WINBORNE, C. J.: The pivotal question on this appeal is whether or not the court below erred in refusing to grant defendant's motion of nonsuit. It is conceded that the deed from the plaintiffs to the defendant is an absolute deed on its face. Furthermore, it is well settled in North Carolina that in order to correct a deed, absolute on its face, into a mortgage or security for a debt, it must be alleged and proven that the clause of redemption was omitted by reason of ignorance, mistake, fraud or undue advantage. This must be established by proof of declarations and proof of facts and circumstances, *dehors* the deed, inconsistent with the idea of an absolute purchase. And the quantum of proof in such cases must be clear, cogent, and convincing. See *Perkins v. Perkins*, 249 N.C. 152, 105 S.E. 2d 663, where numerous cases are cited.

As is said in *Williamson v. Rabon*, 177 N.C. 302, 98 S.E. 830: "There is no rule in our system of jurisprudence that has a greater tendency to maintain the stability of titles and the security of investments than that which upholds the integrity of a solemn written deed * * * ."

Applying the facts of the present case to the law as stated above, the conclusion is that the court should have granted defendant's motion for nonsuit. There is nowhere alleged in the pleadings that the clause of redemption was omitted by mistake, nor do we find any proof was offered to that effect. If there was mistake, it was unilateral and not mutual and was caused by the plaintiffs' failure to read the deed. Furthermore, the record reveals no evidence that defendant Brown told the plaintiffs anything about the contents of the deed, or did anything to prevent him from reading it. Indeed plaintiff testified as follows: "When Perry Brown came down to my house, it wasn't at night; it was late in the evening. When he came in the house, he had the paper in his hand. When he came in, I was holding the baby in my arms. He told me to sign first. I put the baby down; I gave it to my wife. He handed me the paper folded down. It wasn't straight out that I can see, and it was folded something just like that. I didn't know what kind of paper it was. I didn't make any attempt to read it. He just said sign it, and the husband comes first. I told my wife to sign the paper first, and he said, 'No, the husband comes first.' I signed it first and then my wife signed it. I might have been signing to be electrocuted, and I didn't know; but I was signing * * * ."

In this connection these are pertinent decisions of this Court: *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453, where *Parker, J.*, quoting from *Harrison v. RR*, 229 N.C. 92, 47 S.E. 2d 698, said: "The duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in absence of any mistake, fraud, or oppression, is a circumstance against which no relief may be had, either at law or in equity."

In *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364, it is said: "In this State it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what it therein contained."

Furthermore, it is said in *Newbern v. Newbern*, 178 N.C. 3, 100 S.E. 77, " 'The mere fact that a grantor who can read and write

signs a deed does not necessarily conclude him from showing, as between himself and the grantee, that he was induced to sign by fraud on the part of the grantee, or that he was deceived and thrown off his guard by the grantee's false statements and assurances, designedly made at the time and relied on by him.'

"There are many other cases to the same effect, but in all of them there is a clear statement that there must be evidence either of 'fraud in the factum', that is, an inducement to sign by 'trick or device', such as placing the instrument along with several others * * * or evidence of positive misrepresentation designedly made and reasonably relied upon.

"In all other cases the negligence of the party signing the deed to read the same when he had an opportunity to do so will bar the assertion of his equity, '*vigilantibus non dormientibus aequitas subvenit*.' *Dellinger v. Gillespie,* 118 N.C. 737 * * * . In this case, as in that, it may be said: 'It is plain that no deceit was practiced here. It was pure negligence in the defendant not to have read the contract. There it was before him, and there was no trick or device resorted to by the plaintiff to keep him from reading it.'" See also *Furst v. Merritt,* 190 N.C. 397, 130 S.E. 40.

And it has been appropriately said in *Upton v. Tribilcock,* 91 U.S. 45: "It will not do for a man to enter into a contract and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

And in *Poston v. Bowen,* 228 N.C. 202, 44 S.E. 2d 881, a case where the action was to have a deed declared a mortgage, and after the execution of the absolute deed the grantor became a tenant and paid rent, the Court affirmed the nonsuit holding that there was no showing of mistake, undue advantage, fraud, or contrary intention.

Therefore, the conclusion is that the plaintiffs were guilty of heedlessness in signing the absolute deed to convey their interest in the property. They cannot avoid their own conduct in executing the instrument, and then call that heedlessness someone else's fraud. Having so concluded, other errors brought forward on appeal need not be considered.

For reasons stated motion for judgment as of nonsuit should have been granted. Hence the judgment rendered is

Reversed.