CORRELL v. HARTNESS.

FLOYD F. CORRELL AND WIFE, HESSIE W. CORRELL v. DAVID L. HART-
NESS, T/A HARTNESS REALTY COMPANY, AND J. CARROLL ABER-
NETHY, JR., AS TRUSTEE.

(Filed 17 January 1964.)

1. Cancellation and Rescission of Instruments §§ 2, 10½ —

Where the agreement between the parties as contended by defendant
and supported by his evidence is to the effect that plaintiffs were under
contractual obligations to sign the note and deed of trust in question, the
submission of the issue of fraud solely on the basis of plaintiff's contention
that the execution of the note and deed of trust was procured by defen-
dant's false representation that the papers were releases relating to other
property owned by plaintiffs, is error, since the court is required to charge
on all substantive features of the case arising on defendant's pleadings and
evidence as well as on plaintiffs'.

2. Trial § 33—

The court is required to charge the law on every substantive feature of
the case arising on the allegations and evidence, even in the absence of a
special request for instructions.

APPEAL by defendant Hartness from *Campbell, J.,* April 1963 Session
of CATAWBA.

Civil action instituted January 26, 1962, to have adjudged null and
void (1) a deed of trust to J. Carroll Abernethy, Jr., Trustee, and (2)
the $6,000.00 note described therein and purportedly secured thereby,
on the ground the execution thereof by plaintiffs was procured by false
and fraudulent representations of defendant Hartness.

Uncontroverted evidence discloses the following background facts:

Prior to August 28, 1960, David L. Hartness, hereafter called de-
fendant, or David L. Hartness and wife, Mathalda A. Hartness, own-
ed Lot 9 of Belle View Acres Subdivision on which a new house had
been constructed, hereafter referred to as the Belle View property.
Plaintiffs then owned a lot on Sandy Ridge Road Extension on which
there was a five-room house in which they lived, hereafter referred to
as the Correll property. There was another lot on Sandy Ridge Road
Extension on which there was a four-room house in which the mother
of the feme plaintiff lived. This property, for reasons indicated below,
will be referred to hereafter as the Lail property. Mrs. Wilma C. Lail
is the daughter of plaintiffs.

The Lail property was the subject of a lease-option agreement ex-
ecuted in June, 1957, by C. R. Looper and wife as lessors and by
Robert E. Lail and wife, Wilma C. Lail, as lessees. The lease was from
August 1, 1957, through July 31, 1962. It provided for the payment by
the lessees of a rental of $80.00 per month and all taxes, assessments

and fire insurance premiums. The lessees were granted the option to purchase the property at any time during the term of the lease at the price of $5,000.00. In the event the lessees exercised this option, the amount theretofore paid as rent (with certain deductions) was to be credited as part payment of the purchase price.

Plaintiffs alleged they and defendant (on or about August 28, 1960) entered into the following agreement: Plaintiffs agreed to purchase the Belle View property from defendant at $15,500.00 and pay therefor as follows: (1) Plaintiffs would obtain a loan of $9,500.00 from a building and loan association, to be secured by a first mortgage on the Belle View property, and pay this amount to defendant. (2) Plaintiffs would convey to defendant the Correll property subject to a mortgage of $1,914.34. (3) Plaintiffs would have the Lails transfer their lease and option to defendant so that defendant, upon payment of a balance of $3,612.00, could obtain a deed for the Lail property. (4) Defendant agreed to pay plaintiffs $500.00 (a total of $1,000.00) as and when defendant sold each of said properties, to wit, the Correll property and the Lail property. (Note: There is nothing in plaintiffs' allegations or evidence purporting to relate the conveyance of the Correll property and the assignment of the lease-option agreement on the Lail property to the specific sum of $6,000.00, to wit, the balance due on the agreed purchase price of $15,500.00, or to the effect the Correll property or the Lail property was accepted by defendant at any agreed valuation.)

Plaintiffs alleged they obtained the $9,500.00 mortgage loan as agreed and paid the amount to defendant; that they conveyed the Correll property to defendant; and that the Lails assigned the lease and option on the Lail property to defendant.

The note and deed of trust plaintiffs attack are not set out in the record. A stipulation discloses the following: Plaintiffs executed the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, both dated September 23, 1960. The deed of trust is on a standard printed form. The deed of trust recites that plaintiffs are indebted to David L. Hartness and wife, Mathalda A. Hartness, in the sum of $6,000.00, for which they executed and delivered to David L. Hartness and wife, Mathalda A. Hartness, their note in the sum of $6,000.00 payable three years after date, with interest from date at the rate of 6% per annum, payable annually. The deed of trust provides that plaintiffs convey to Abernethy, Jr., Trustee, as security for the payment of their said $6,000.00 note, the real estate they had purchased from David L. Hartness and wife, Mathalda A. Hartness, to wit, the Belle View property. Plaintiffs' execution of the deed of trust "was notarized" by

W. E. Frye, a notary public, on September 27, 1960; and the deed of trust was filed for record and recorded on October 17, 1960, in the Catawba County Registry.

Plaintiffs alleged Floyd F. Correll executed the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, in reliance upon defendant's false and fraudulent representations that the papers he was requested to sign and did sign were releases relating to the Correll and Lail properties and upon defendant's assurance that the papers would not be presented to his wife, Hessie W. Correll, for her signature unless and until submitted to and approved by Mrs. Lail, their daughter; and that Hessie W. Correll executed the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, in reliance (1) upon defendant's false and fraudulent representations that the papers she was requested to sign and did sign were releases relating to the Correll and Lail properties and (2) that said papers had been submitted to and approved by Mrs. Lail. Plaintiffs alleged they did not learn the papers they had signed were a note and deed of trust on the Belle View property until "several months after this occasion" when a party who was interested in purchasing the $6,000.00 second mortgage note came to inspect the Belle View property.

Plaintiffs prayed (1) that "the said deed of trust and note be declared void and marked canceled from the record"; (2) that "the defendant pay to the plaintiffs the sum of $500.00"; and (3) that the defendant be taxed with the costs of the action.

In a separate answer J. Carroll Abernethy, Jr., Trustee, denied all allegations of the complaint (except those relating to the residence of the parties) for lack of knowledge or information sufficient to form a belief as to the truth thereof.

Answering, defendant denied categorically all of plaintiffs' allegations that their execution of the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, was procured by false and fraudulent representations of defendant. As to the terms of their agreement, defendant alleged the purchase price for the Belle View property was, as alleged also by plaintiffs, the sum of $15,500.00 of which $9,500.00 was to be and was obtained by plaintiffs from the First Savings and Loan Association of Hickory on a first mortgage on said property and paid over to defendant. Too, defendant alleged, also in accord with plaintiffs' allegations, that plaintiffs were to convey the Correll property to defendant and were to assign or cause to be assigned to defendant all rights of the lessees under the lease-option agreement on the Lail property. Defendant alleged further that plaintiffs agreed to execute a note and deed of trust for the balance of the purchase price for the

Belle View property, to wit, $6,000.00, and that the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, were executed by plaintiffs in exact accord and compliance with their agreement. Defendant alleged further that the Correll property and the Lail property were each valued in the trade at $4,500.00 and that, under their agreement, as each of these properties was sold by defendant the difference between $4,500.00 and the debt on such property was to be credited on plaintiffs' said $6,000.00 balance purchase price note. Defendant alleged further that he had sold the Correll property and, in accordance with said agreement, had entered a credit of $1,517.61 on said $6,000.00 note. Defendant alleged the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, are valid obligations.

Defendant prayed (1) that "the plaintiffs recover nothing of the defendants and that this action be dismissed"; (2) that the costs of this action be taxed against plaintiffs; and (3) that "the defendant have and recover from the plaintiffs such other and further relief as this defendant may be entitled to receive in the premises."

The court, without objection, submitted one issue, namely: "Did the defendant procure the execution and delivery of the Deed of Trust recorded in Book 641, at Page 350, and the note in the amount of $6,-000 by fraud?" The jury answered, "Yes."

Upon said verdict, the court entered judgment as follows:

"NOW, THEREFORE, it is ORDERED, ADJUDGED and DE-CREED that that certain Deed of Trust recorded in Book 641, at Page 350, and that certain promissory note dated September 23 (*sic*), and signed by Floyd F. Correll and wife, Hessie W. Correll, made payable to David L. Hartness be, and the same are declared hereby to be null and void and of no effect and that the aforesaid Deed of Trust is hereby ordered canceled from the public records of this State.

"The Court takes judicial notice of the fact that David L. Hartness is the defendant referred to in the above issue and that the other defendant named in this case, being J. Carroll Abernethy, Jr., as Trustee, has no liability nor interest in the case except as having been named trustee in the Deed of Trust specified above.

"It is FURTHER ORDERED that the defendant, David L. Hartness, be taxed with the cost of this action as same may be determined by the Clerk."

Defendant excepted and appealed.

*Joe P. Whitener for plaintiff appellees.*
*George D. Hovey and G. Hunter Warlick for defendant appellant Hartness.*

BOBBITT, J. *In limine,* it is noted that Mathalda A. Hartness is not a party to this action. Hence, her interest, if any, in the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, is not affected by the verdict and judgment.

The verdict, whether considered alone or in conjunction with the charge, does not establish the terms of the agreement entered into between plaintiffs and defendant. While the court adjudged the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, null and void, whether plaintiffs are now indebted to defendant for any part of the agreed purchase price of $15,500.00 for the Belle View property has not been determined.

The single issue submitted relates solely to whether the execution by plaintiffs of the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, was procured by false and fraudulent representations of defendant. The following is typical of instructions to which defendant excepted and assigns as error: "Now, the Court instructs you if you are satisfied from this evidence and by its greater weight that Hartness did make a misrepresentation to Mr. and Mrs. Correll—that he wilfully and purposely made a misrepresentation to them and that he misled them and misinformed them that they were signing a release, when in truth and in fact he knew that they were signing a Deed of Trust and a note, and that he purposely misled them and that they (Mr. and Mrs. Correll) reasonably, by the exercise of due care on their part . . . that they reasonably relied upon these representations by Mr. Hartness and they signed under those circumstances, then the Court instructs you that you would answer that first question 'Yes.' If you are not so satisfied from this evidence and by its greater weight that they were misled and that they exercised reasonable care—the care of a reasonable business person in signing papers—then you would answer it 'No'."

With reference to whether defendant represented the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, to be a release or releases, the evidence for plaintiffs and defendant, respectively, is in sharp conflict.

Apart from conflicting allegations and evidence as to whether such representations were in fact made, defendant alleged and offered evidence tending to show that plaintiffs were obligated by the terms of their agreement to execute the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, and that their execution thereof was merely a compliance with their contractual obligation. If the jury accepted this view, the issue should have been answered, "No." However, the issue was submitted and the jury was instructed solely with reference

to whether the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, were signed by plaintiffs on account of alleged misrepresentations by defendant as to what they were and without reference to whether plaintiffs were obligated by their agreement to sign them.

In our view, the validity of the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, must be determined in the context of the entire agreement entered into between plaintiffs and defendant. Whether plaintiffs were obligated by their agreement to execute the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, was a substantive feature of the case arising on defendant's pleading and evidence. Failure to charge the law on such substantive feature, even in the absence of special request for such instruction, was prejudicial error for which defendant is entitled to a new trial. *Whiteside v. Mc-Carson,* 250 N.C. 673, 680, 110 S.E. 2d 295, and cases cited.

Defendant assigns as error the overruling of his motion for judgment of involuntary nonsuit. In this connection, defendant relies on *Isley v. Brown,* 253 N.C. 791, 117 S.E. 2d 821, on cases cited therein and other decisions of like import. However, as indicated above, the trial proceeded on an erroneous theory. Clearly, whether plaintiffs were obligated by their agreement with defendant to execute the $6,000.00 note and the deed of trust to Abernethy, Jr., Trustee, was of material significance in passing upon the sufficiency of plaintiffs' evidence to warrant submission of the single issue on which the case was tried. In these circumstances, defendant's assignment of error is overruled. Upon retrial, the court will be free to consider defendant's motion for judgment of nonsuit, if interposed, without direction or restraint by any statement in this opinion.

While not the basis of decision on this appeal, it seems appropriate to call attention to the matters set out below.

There is a variance between plaintiffs' *allegation* that defendant agreed to pay them $500.00 (a total of $1,000.00) as and when defendant sold each of said properties, to wit, the Correll property and the Lail property, and plaintiffs' *evidence.* Plaintiffs' evidence is to the effect that these amounts were to be loans to enable plaintiffs to consolidate certain outstanding small obligations. Plaintiff Floyd F. Correll testified: "I was to pay the $1,000.00 back to Mr. Hartness at the rate of $30.00 a month." The evidence tends to show plaintiffs did receive $500.00 from defendant when defendant sold the Correll property.

All the evidence tends to show defendant did not obtain a deed from Looper for the Lail property and did not advance to plaintiffs the second $500.00. The causes and consequences of defendant's failure in

these respects are not pertinent on this appeal. Suffice to say, defendant contends he was without fault in connection with his failure to obtain a deed for the Lail property and contends further that any failure on his part in this respect would at most entitle plaintiffs to a credit of some undetermined amount on their $6,000.00 note.

Whether the parties should ask leave to file amendments to the pleadings to the end that all of their rights and liabilities *inter se* may be determined in this action should receive consideration.

New trial.