ANNA BROWN v. JOHN T. GURKIN, JOHN W. GURKIN

No. 742SC251

(Filed 17 July 1974)

**Reformation of Instruments § 7— action to have deed declared deed of trust — insufficiency of evidence**

Directed verdict was properly entered in favor of defendants in an action to have a deed reformed and declared a deed of trust where plaintiff neither alleged nor offered any evidence tending to show that a clause of redemption was omitted from the deed which she signed because of ignorance, mistake, fraud or undue advantage, and there was no evidence that plaintiff was prevented from ascertaining that the paper writing which she signed was a deed conveying the property to defendants with a life estate in the home reserved to her.

APPEAL by plaintiff from *Cohoon, Judge,* 13 November 1973 Session of Superior Court held in MARTIN County. Heard in the Court of Appeals 11 April 1974.

This is a civil action wherein the plaintiff, Anna Brown, seeks to have a deed, absolute on its face, reformed and declared a deed of trust.

The evidence at trial tended to show the following:

In 1965 James Brown, plaintiff's son, obtained a loan in the amount of $3,000.00 from Wachovia Bank and Trust Company (Wachovia), said loan being secured by a deed of trust on land owned by plaintiff. Plaintiff's son was unable to satisfy the debt to Wachovia and the bank threatened to foreclose on the plaintiff's property. In order to prevent foreclosure, the plaintiff's son approached Mr. John W. Gurkin "about borrowing some money to pay off this farm note." The events which transpired thereafter are detailed in the somewhat confusing and contradictory testimony of the plaintiff.

"No, sir, I don't remember the date of the month it was, neither of the year Mr. Gurkin came by to bring me to Williamston to sign a deed. Yes, he came to my house Mr. Gurkin's son and took me uptown. * * * Yes, I went up there because that is where he wanted me to sign the paper.

Yes, to sign some papers. I guess it was a deed. He told me he wanted me to sign a deed. I call it a paper. Yes, I went with him in a car, I think. No, sir, no one else on

the car. No, sir, I did not know what I was signing. I certainly did not. No, I had not asked Mr. Gurkin for any money to take up the place. I don't think Mr. Gurkin came but once to my house. Right that was the time he took me uptown.

I didn't tell him anything that I know of what I wanted to do—I wanted my home back. I rode uptown with him to sign the paper with him. No, he didn't tell me what kind of paper it was. If he did I forgot what he said about the paper, what kind it was.

I was 75 or 80 or 90 years old, along in there, because they say I am 80 now. I said 75 or 80 at the time he took me uptown. No, Mr. Gurkin did not explain what the paper was. Of course, I looked at the paper when I was signing it. No, sir, I didn't know what I was signing. I don't believe there was nobody in there but myself and Mr. Gurkin, and the one doing the writing. I don't believe there was. After I signed the paper Mr. Gurkin didn't tell me anything only we got ready and come on back home.

He didn't give me anything, but his father, before I left home, his father gave me $20.00. Mr. Gurkin took me home. Yes, same one carried me brought me back. No, sir, I have not learned since what that paper was that I signed. I did not know the paper was a deed.

No, sir, I never asked Mr. Gurkin for any money. No, sir, I did not. No, sir, I did not want to sell my place at the time. No, sir, I had never approached Mr. Gurkin about selling my place. Yes, I now know the paper I signed was a deed, but I didn't know it then."

While on cross-examination of the plaintiff, the record discloses:

"Q. It was understood between you and him at the time . . .

OBJECTION. OVERRULED.

that you could live in that house as long as you lived, there would be a life estate preserved in that house for you, wasn't it?

A. Yes, sir, life estate. Yes, this was understood by me. Yes, sir, I knew it was a deed. Right that is the reason

I later went to him about buying it back. No. Mr. Johnny Gurkin did not give me four fifty dollar bills. If he did I don't remember. No, sir, I certainly don't, my memory is short . . . . "

At the conclusion of the plaintiff's evidence, the defendants moved for a directed verdict, and this motion was granted. The plaintiff appealed.

*Milton E. Moore and Regina Moore for plaintiff appellant.*

*Griffin & Martin by Clarence M. Griffin for defendant appellees.*

HEDRICK, Judge.

The only question presented on this appeal is whether the Court erred in directing verdict for the defendants.

It is well-settled in this State that in order to reform a deed, absolute on its face, into a mortgage or security for a debt, it must be alleged and proven that the clause of redemption was omitted by reason of ignorance, mistake, fraud, or undue advantage. This must be established by proof of declarations and proof of facts and circumstances, *dehors* the deed, inconsistent with the idea of an absolute conveyance. *Isley v. Brown,* 253 N.C. 791, 117 S.E. 2d 821 (1960) ; *Perkins v. Perkins,* 249 N.C. 152, 105 S.E. 2d 663 (1958).

In *Harris v. Bingham,* 246 N.C. 77, 97 S.E. 2d 453 (1957), Parker, J., later C.J., quoting from *Harrison v. R. R.,* 229 N.C. 92, 47 S.E. 2d 698 (1948), said:

"The duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in absence of any mistake, fraud, or oppression, is a circumstance against which no relief may be had, either at law or in equity." See also, *Williams v. Williams,* 220 N.C. 806, 18 S.E. 2d 364 (1941).

In the present case, the plaintiff neither alleged nor offered any evidence tending to show that the clause of redemption was omitted from the deed, which she signed, because of ignorance, mistake, fraud, or undue advantage. There is no evidence in this record tending to show that plaintiff was prevented in any way from ascertaining that the "paper" which she was signing

Eggimann v. Board of Education

was a deed conveying the property to the defendants with a life estate in the home reserved to her.

When evidence in this case is considered in the light most favorable to the plaintiff and all contradictions and conflicts in plaintiff's testimony are resolved in her favor, we are of the opinion that Judge Cohoon was correct in directing a verdict for defendants.

The judgment is

Affirmed.

Judges BRITT and CARSON concur.