# Staunton

SADIE M. CORBETT v. SHIRLEY ANN BONNEY.

September 8, 1961.

Record No. 5291.

Present, All the Justices.

The opinion states the case.

*Robert G. Winters* (*Pilcher, Underwood, Pilcher & Winters*, on brief), for the plaintiff in error.

*Calvin W. Breit (Melvin Friedman; Amato, Babalas, Breit & Cohen,* on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

This appeal involves an action brought by Shirley Ann Bonney, plaintiff, against Sadie M. Corbett, defendant, for damages resulting from injuries she received while a passenger in an automobile operated by her husband, Maurice W. Bonney, when his car was struck in the rear by a vehicle driven by defendant in Charlotte, North Carolina.

Defendant filed a plea of release and also her grounds of defense to the motion for judgment. A similar plea was filed by her in a pending action instituted by Maurice W. Bonney arising out of the same accident, and since the Bonneys had executed a joint release, the trial court, without objection, ordered that the cases be heard together on the issue raised by the special pleas. A trial was had on June 13, 1960, and at the conclusion of all the evidence defendant moved to strike plaintiffs' evidence, which motion was overruled. The jury returned verdicts in favor of both plaintiffs, thus holding the release invalid. Defendant's motion to set aside the verdicts was overruled. Thereafter, on July 27, 1960, a trial was had on the merits of plaintiff's (Mrs. Bonney's) case. The jury found for plaintiff and fixed her damages at $5,000 upon which judgment was entered. We granted defendant a writ of error.

Defendant relies solely upon assignments of error Nos. 3 and 4. They relate to the trial on defendant's special plea of release, and they allege that the court erred in overruling defendant's motion to strike plaintiff's evidence because plaintiff failed to prove (1) "fraud in the procurement of the release by clear, concise and credible evidence", and (2) "a mutual mistake of fact as to her alleged injuries."

We, therefore, are concerned here only with the evidence adduced at the trial on defendant's special plea of release. The Bonneys and defendant were friends and residents of Norfolk, Virginia. They drove to Charlotte, North Carolina, in their respective automobiles to attend a Jehovah's Witness convention. While there, on August 15, 1959, at approximately 10 a.m. defendant, who was following Bonney's vehicle, negligently operated her car and struck Bonney's vehicle in the rear causing it damage. Defendant contacted Robert L. Fry, a claims adjuster for her insurance carrier, The Celina Mutual Insurance Company. Fry drove to the scene of the accident, and made arrangements for necessary temporary repairs to Bonney's car at Kiser's

garage. He then escorted the Bonneys and defendant to a local hospital, where plaintiff was examined by Dr. Basil Boyd, an orthopedic surgeon. The X-rays taken were negative. Dr. Boyd diagnosed her injury as "a complaint of lombar cervical spine". He rendered her "emergency treatment which consisted of a sedative and muscle relaxer and told her to contact her physician on her return to Norfolk if necessary". The examination consumed about an hour, after which the Bonneys left the hospital.

Later in the day the Bonneys contacted Fry on the telephone and arrangements were made for Fry to drive them the next morning to Kiser's garage where the automobile had been temporarily repaired. There, according to Fry, Bonney told him of plaintiff's condition and that Dr. Boyd had said there would possibly be additional treatments by an orthopedic doctor in Norfolk. Fry said there was a discussion with respect to the amount of damages sustained as a result of the accident, after which the Bonneys agreed to accept $197.96 in settlement of their claims. It covered repairs made to the automobile; $75.46 for additional repairs required; $15 to pay Dr. Boyd; $15 to pay the hospital; $5 for a telephone call, and the balance was for further medical treatment of plaintiff, if necessary. As a consequence he said that he filled in a release form[1] in their presence and explained

---

[1] "GENERAL RELEASE, HUSBAND AND WIFE

KNOW ALL MEN BY THESE PRESENTS:

That we, Maurice W. Bonney and Shirley A. Bonney husband and wife,
      (Husband)               (Wife)

residing at 1399 Willow Ave. Norfolk 6, Va. and each being of lawful age, for the sole consideration of One Hundred Ninety Seven and 96/100 dollars ($197.96) to us in hand paid, the receipt whereof is hereby jointly and severally acknowledged, have remised, released, and forever discharged and by these presents do, severally and jointly, for ourselves and for our heirs, executors, administrators, and assigns, do hereby remise, release, and forever discharge Sadie M. Corbett and his, her, their, and its successors and assigns, and each of their heirs, executors, and administrators, and all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action, of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, loss and damage to property, and the consequences thereof, resulting, and to result, from an accident which happened on or about the 15th day of August, 1959, at or near The intersection of Independence Blvd. & So. Tryon St. Charlotte, N. C.

It is further understood and agreed that this settlement is the compromise of doubtful and disputed claims, and that the payments are not to be construed as an admission of liability on the part of Sadie M. Corbett by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

936

to them it was a release from any and all claims resulting from the accident, and that the Bonneys read it before signing. Their signatures were witnessed by A. A. Ramsey, a Charlotte police officer, and Robert V. Kiser, who were at the garage. Ramsey testified that the release was filled in and signed by the Bonneys in his presence; that he and Kiser signed as witnesses in their presence; that Bonney explained to him what "it was all about" and was satisfied, and that he appeared to be normal and joked at the time.

Bonney stated that when he signed the release, neither he nor Fry knew that he was injured. On the other hand, plaintiff said her husband was "nearly crazy and was having pain". Both plaintiff and Bonney testified they did not read the instrument before signing it and that it was not discussed as a release. When Bonney was asked what was said with regard to plaintiff's releasing any claim for her injury, he replied: "He. [Fry] said that this was in order to get her out of the hospital in Charlotte, and to get my car, and that that was all I was supposed to be signing for." When asked if there was any particular reason why he did not read the release before executing it, he said: "Well, I was so excited and so upset on account of my wife's injury, and I thought that Mr. Fry was being fair with me, so I just signed it thinking that he was being fair in telling me that I was only signing for my car and for my wife up until that point. So, therefore, I signed it."

Plaintiff stated Fry was "so nice about everything"; that at the garage he said "that I could now be turned over to my husband, that I was O.K. to go back"; that the car was ready, and that the signing of the form "was just a formality that was routine, that had to be done on every occasion." Plaintiff testified that she did not read the release because "I thought that he [Fry] was telling the truth," and that had she known the extent of her injuries and that the instrument was a release, she would not have signed it. She further testified:

"Q. After you signed it did Mr. Fry ever say anything to you about getting further medical treatment in Norfolk?

"A. When I went over and got in my car and we were getting

We further state that we have carefully read the foregoing release and know the contents thereof, and we sign the same as our own free acts.

WITNESS our hands and seals this 16th day of August, 1959.

SIGNED IN THE PRESENCE OF     CAUTION: READ BEFORE SIGNING
A. A. Ramsey                            )
4014 Paisley Place                      )     Maurice W. Bonney   (SEAL)
Charlotte, N. C.                        )     Shirley A. Bonney   (SEAL)
Robert V. Kiser 900 Walnut       )                            "

ready to leave the garage—and, in fact, leave the City of Charlotte—he came over and I rolled down the window, and he said that he hoped I would be getting along all right, and to go ahead and have whatever medical attention I needed, and to do that until I got well, and that he hoped I would be feeling good.

\* \* \* \* \* \* \*

"Q. When you were examined by Dr. Boyd in Charlotte, Mrs. Bonney, did he indicate to you that you might have need for further treatment in Norfolk?

"A. Yes, sir.

"Q. You knew that at the time you signed that paper, did you not?

"A. I knew that I would have to have something more done, because I was just in so much pain. I could not walk alone. I had to have the help of my husband. I knew that something was wrong."

After signing the release, the Bonneys returned to Norfolk where Mrs. Bonney received a number of treatments for her injury.

Fry, not having draft authority, forwarded the release to defendant's insurance carrier, who in turn mailed three drafts totalling the sum of $197.96, payable to the Bonneys and others. But before Fry received the drafts, he was advised by letter that Robert Cohen of the law firm of Amato, Babalas, Breit and Cohen, of Norfolk, was representing the Bonneys for injuries and damages sustained in the accident. Whereupon, on August 15, 1959, Fry mailed the drafts to Cohen, who returned them to Fry on September 1, 1959.

We shall consider first whether the trial court erred in refusing to strike plaintiff's evidence with regard to fraud because of her failure to prove fraud in the procurement of the release. Since the instrument was executed in North Carolina, the law of that State governs.

*Harrison* v. *R. R.*, 229 N. C. 92, 47 S. E. 2d 698, involved the validity of a release for injuries plaintiff sustained in an accident during the course of his employment by defendant. Plaintiff was 32 years of age, literate and had business experience. He claimed that he signed the instrument without reading it in reliance upon the statement of defendant's agent that it was for the purpose of admitting him to the hospital, when in fact it was a release from liability in consideration of defendant's agreement to pay all medical and hospital bills with regard to his injuries. In holding that the evidence showed that plaintiff had knowledge of the nature of the instrument and that the evidence was not sufficient to show fraud in the procurement of the release, the court observed:

"It is established by the decisions on the subject that one who signs a written instrument, without being induced thereto through fraud or deception, cannot avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents, but relied upon what another said about it. *School Com.* v. *Kesler*, 67 N. C., [443], 448; 45 Am. Jur., 683; Anno. 55 Am. St. Rep., 509. It is the duty of one signing a written instrument to inform himself of its contents before executing it, if he have the ability and opportunity to do so, and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it. 96 A. L. R., 995. He cannot invoke his own heedlessness to discredit his solemn release, and then call that heedlessness someone else's fraud. *Shaffer* v. *Cowden*, 88 Md., 394, 41 Atl., 786." 229 N. C. 92, at page 95, 47 S. E. 2d 698, at page 700.

See *Watkins* v. *Grier*, 224 N. C. 339, 343, 30 S. E. 2d 223; *Aderholt* v. *R. R.*, 152 N. C. 411, 67 S. E. 978; *Ashby* v. *Dumouchelle*, 185 Va. 724, 733, 40 S. E. 2d 493.

In 45 Am. Jur., Release, § 18, pp. 683, 684, it is stated:

"In the absence of fraud or a relation of trust and confidence between the parties, a releasor can ordinarily not avoid the effect of a release upon the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it. * * *" See 76 C. J. S., Release, § 25 b, pp. 647, 648.

Plaintiff argues "the testimony shows that the adjuster here befriended the claimants and ingratiated himself with them in order to eventually more easily mislead them with regard to the release agreement." Plaintiff's testimony was that Fry told her that when there was an accident, the car was of less concern and the injured had to be cared for first; that plaintiff was his responsibility, and that he wanted her to be seen by a doctor, which was done. She said that he had the car taken to the repair shop; that he offered the Bonneys the use of his car; that he offered to take them to breakfast; that he drove them to the garage to get their automobile, and that he "was just so nice about everything." We find no merit in this contention.

Bonney was 29 years old and Mrs. Bonney was age 24 at the time of the accident. Both could read and write. He was employed as cashier and credit manager for Miller Motor Express, and was familiar with bills of lading and other similar documents. At the top of the release in large type are these words: "GENERAL RELEASE, HUSBAND AND WIFE", and at the bottom, immediately above

the space reserved for claimants' signatures, is "CAUTION: READ BEFORE SIGNING." Bonney stated they signed the release without reading it because Fry said it was to get plaintiff out of the hospital and to get his car. It is difficult to believe that the Bonneys could have relied upon such a statement. In the first place, plaintiff was not in the hospital, and in the second place, the car could have been secured by the payment of $20 without signing anything. The statement attributed to Fry by plaintiff that the instrument "was just a formality that was routine, that had to be done on every occasion", can hardly be considered as fraud or misrepresentation of a material fact. It is common knowledge that when a settlement has been agreed upon, a release is usually executed by the claimant.

Here the plaintiff had the ability and the opportunity to read the release, and it was her duty to do so before signing it. No valid excuse has been shown for not reading the instrument. She cannot invoke her own heedlessness to discredit her solemn release, and call such heedlessness another person's fraud. It is a cardinal rule that fraud must be proved by clear, cogent and convincing evidence. On the record before us the evidence does not measure up to that degree of proof, and we find, as a matter of law, that there was no fraud in the procurement of plaintiff's signature to the release.

■ We shall now consider whether the trial court erred in overruling defendant's motion to strike plaintiff's evidence as to mutual mistake on the ground that a mutual mistake of fact as to plaintiff's injuries had not been proved.

In 45 Am. Jur., Release, § 20, pp. 685, 686, it is stated: "* * * While a mistake as to the extent of the injury, due to unknown conditions, is material, it would seem that unknown and unexpected consequences of a known injury will not bring a case within the rule permitting avoidance of a release on the ground of mutual mistake. In order to avoid a release on the ground of mutual mistake as to the nature or extent of the injuries, there must be more than a mere mistake as to the time which will probably be required for recovery from a known injury, since a statement by the releasee's physician in this regard may be considered ordinarily as a mere expression of opinion. * * *" See Annotation 48 A. L. R. p. 1464, et seq., 76 C. J. S., Release, § 25a, pp. 645, 646.

The evidence shows that plaintiff knew at the time she executed the release that further treatment of her injuries would be required. Fry was also aware of that fact. A sum, though small, was included in the release for additional medical treatment, if necessary. There

was no evidence adduced at the trial on the release that she had any injury other than that which she was diagnosed as having by Dr. Boyd. The fact that the treatment of plaintiff's known injuries has been prolonged does not bring her case within the rule permitting avoidance of the release on the ground of mutual mistake. As was said in *Fix* v. *Craighill*, 160 Va. 742, 755, 169 S. E. 598, "Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of fact as to entitle either party to relief."

*Ice Company* v. *Lee*, 199 Va. 243, 99 S. E. 2d 721, cited by plaintiff, is factually different from the present case and is not controlling.

We hold, as a matter of law, that the evidence was insufficient to support a finding that there was a mutual mistake of fact with regard to plaintiff's (Mrs. Bonney's) injuries, and that the trial court erred in overruling defendant's motion to strike her evidence.

For the reasons stated the verdict and judgment awarding plaintiff $5,000 are set aside; the verdict and judgment in favor of plaintiff, Shirley Ann Bonney, on the trial of the special plea are set aside, and final judgment is here entered for defendant on the special plea of release.

*Reversed and final judgment.*