LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Bruce C. Halstead

v.

Va. Farm Bureau Mutual Ins. Co. et al.

April 17, 1962

Case No. B-4932

By JUDGE JOHN HICKS RIVES, JR.

The complainant, on January 10, 1959, was riding as a guest passenger in an automobile owned and operated by James F. Cook, when the vehicle collided with an automobile operated by Frederick Downing. Thereafter, on January 13, 1960, A. B. Crittenden, an adjuster for Farm Bureau Mutual Insurance Co., herein referred to as "Insurer" or "Farm Bureau," after some negotiations with complainant, delivered to the latter, a draft of Farm Bureau in the sum of $17.00 payable to complainant. On the face of the draft appears after the printed word "For," the following: "Release of all claims date of accident December 10, 1959." On the reverse side of the draft appears these printed words: "Release - The endorsement(s) herein acknowledges payment in full and a complete release of claim or claims shown on other side." Following these printed words is the signature of Bruce C. Halstead on a line for such signature, and the printing, viz. "(Seal)."

This suit filed by the complainant alleges that the release provisions of the draft are ineffective, because delivered and accepted under a mutual mistake of fact, and prays that this court so adjudge, and that it decree the release be cancelled and declared

null and void, both as to Frederick Downing and Farm Bureau.

The evidence shows that after the collision, the complainant was taken to the "Emergency Room" of the Medical College of Virginia Hospital, where he was examined, given treatment, his chest X-rayed and he was then released. At the time, the complainant was suffering chiefly from his chest, which struck the dash-board of the car at the time of the collision. He admitted he had a headache he assumed resulted from his forehead striking the windshield, but did not pay much attention to it and apparently did not call it to the attention of the examining doctor. This headache continued that night, but disappeared the next day. The only external evidence of this was a small spot of dried blood on his forehead which he failed to note until his wife on the night of the accident called it to his attention.

On December 22, 1959, Mr. Crittenden called upon the complainant at his office and attempted to negotiate with him toward a compromise and settlement of the claim. The complainant refused to consider these overtures, since, as he told Crittenden, his chest was still sore and was causing some discomfiture, he wanted to wait at least a week so he could more accurately appraise his chest condition and determine whether or not he would have more trouble with it. Crittenden thereafter tried to get an interview with complainant at least twice without success, until January 13, 1960, when the draft was delivered.

At this conference when asked about what amount he wished in settlement, Mr. Halstead replied that he wanted only reimbursement of the charges made by Medical College of Virginia Hospital in the sum of $17.00 for the emergency room treatment and the X-rays. Mr. Halstead testified that Crittenden asked if he did not wish some additional money for his injuries; that he replied the $17.00 represented his total losses; that he did not wish to make anything but only wanted reimbursement, for the $17.00, since his chest injuries had cleared up.

It was not until May of 1960 the complainant had noticed anything amiss with respect to his eyes and then in September, 1960, he consulted Dr. Dupont Guerry, III and the latter found the complainant had vision of 22/100 in the right and 20/20 in the left eye with a bullous detachment of the retina in each eye involving the macula.

The evidence is clear and convincing to the court that neither the complainant nor Mr. Crittenden had the slightest suspicion on January 13, 1960, the complainant had suffered any injury to his eyes at the time of the collision of the vehicles on December 10, 1959.

The testimony of Dr. Johnson and Dr. Guerry as to the causal relationship of the collision producing the injury to complainant's eyes conflict, and this issue will be discussed later.

At present, the question for consideration is the binding effect of the "release" upon the complainant and whether or not the court, under the facts as above set out, can and should declare the release null and void.

Consideration of the great number of cases decided on issues relating to avoidance of releases for personal injuries shows a gradual change taking place in the body of the case law on the subject of avoidance of such releases on the grounds of fraud or mistake.

As evidence of the changing concepts, the annotator in 71 A.L.R.2d, p. 88, makes the following observations:

> While it is often said that the law favors compromise and accordingly the burden of proof is placed on one contending that a release was secured as the result of mistake or misrepresentation as to the nature or extent of the releasor's injuries, and in many jurisdictions such mistake or misrepre-

sentation must be shown by clear and convincing evidence, there nevertheless appears to be a definite trend in most jurisdictions towards granting relief liberally where it is made to appear that an injured party released his claim under a false impression that he was fully informed as to the nature and extent of his injuries.

The attempts of the courts to achieve broadly equitable results in this situation while, in most instances, continuing to cast their opinions in terms of the traditionally stringent restrictions upon relief from a contract valid upon its face, have led to some confusion and contradictions in the cases, especially in those where the relief is claimed because of the releasee's innocent misrepresentations as to the nature and extent of the injury. A few courts, recognizing these difficulties, have said that cases of the type here considered are to some degree sui generis and, substantially abandoning any attempt to fit the situation within the classic limitations of the law of fraud or mistake, have held that the release may be set aside upon a showing of an inequitable result unless it is established that it was "fairly and knowingly made," thus approximating, to some degree, the rule that has long been applied in admiralty with respect to seamen's releases.

One must bear in mind that our Supreme Court of Appeals has passed upon the question in Seaboard Ice Co. v. Lee, 199 Va. 243 (1957), applying Virginia law, and again in the case of Corbett v. Bonney, 202 Va. 933 (1961), where that Court was considering a release executed in North Carolina, and therefore applying the laws of North Carolina. Our Court of Appeals has not indicated that the doctrine or theory that cases involving the validity of releases to be considered in any manner other than the ordinary cases involving attacks upon the validity of other contracts, or that

release contracts should be considered sui generis and special rules of law applicable.

For the purpose of the court's consideration of this case, no question of fraud is involved but only the question of mistake of fact.

Again, the court is not here considering the validity of a release where there was a question of legal liability of the releasee. Certainly, if the issue is not only the quantum of damages, but also the denial of liability by the releasee, there is no reason why a valid binding release may not be given to the releasee and in such instances the releasor should not be permitted to upset a compromise upon liability however mistaken he may have been as to the extent of his injuries.

In Seaboard Ice Co. v. Lee, supra, it is obvious that the parties were dealing with respect to the injured parties special damages, i.e. $6.00 of doctor's bills and $94.00 "loss of time: of his truck" which could be translated to his earnings. No thought was being given to the claimant's injured arm, and in point of actual fact, neither of the parties knew of his injured arm, for in fact the doctors themselves did not appreciate the gravity of the condition. As one of the doctors said, "We missed it cold."

In the case of Corbett v. Bonney, supra, on the other hand, Snead, J., who delivered the opinion of the court, at p. 939 said:

> (2) We shall now consider whether the trial court erred in overruling defendant's motion to strike plaintiff's evidence as to mutual mistake on the ground that a mutual mistake of fact as to plaintiff's injuries had not been proved.
>
> In 45 Am. Jur., Release, Section 20, pp. 685, 686, it is stated: ". . . While a mistake as to the extent of the injury, due to unknown conditions, is material, it would

seem that unknown and unexpected consequences of a known injury will not bring a case within the rule permitting avoidance of a release on the ground of mutual mistake. In order to avoid a release on the ground of mutual mistake as to the nature or extent of the injuries, there must be more than a mere mistake as to the time which will probably be required for recovery from a known injury, since a statement by the releasee's physician in this regard may be considered ordinarily as a mere expression of opinion. . . ." See Annotation 48 A.L.R. p. 1464, et seq., 76 C.J.S., Release, Section 25a, pp. 645, 646.

The evidence shows that plaintiff knew at the time she executed the release that further treatment of her injuries would be required. Fry was also aware of that fact. A sum, though small, was included in the release for additional medical treatment, if necessary. There was no evidence adduced at the trial on the release that she had any injury other than that which she was diagnosed as having by Dr. Boyd. The fact that the treatment of plaintiff's known injuries has been prolonged does not bring her case within the rule permitting avoidance of the release on the ground of mutual mistake. As was said in Fox v. Craighill, 160 Va. 742, 755, 169 S.E. 598, "Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of fact as to entitle either party to relief."

<u>Ice Company v. Lee, 199 Va. 243, 99 S.E.2d 721, cited by plaintiff, is factually different from the present case and is not controlling.</u> (underscoring supplied)

> We hold, as a matter of law, that the evidence was insufficient to support a finding that there was a mutual mistake of fact with regard to plaintiff's (Mrs. Bonney's) injuries, and that the trial court erred in overruling defendant's motion to strike her evidence.

The above quotation from the opinion of Mr. Justice Snead shows that although the court was applying North Carolina law in the case at bar, it nevertheless went to the trouble to point out that Seaboard Ice v. Lee, supra, was distinguishable and was not controlling in the case at bar. This the court need not have done unless it was of the opinion that the laws of Virginia and North Carolina on these questions were the same. Otherwise it would have declared that Seaboard Ice v. Lee was not controlling as that case announced the Virginia law, while in Corbett v. Bonney the court was applying North Carolina law.

There is some apparent conflict in the language in the opinions of the North Carolina courts, but it seems that the courts of that state have followed this rule set out in the following paragraph (Pass v. McLaren Rubber Co., 198 N.C. 123, 150 S.E. 709 (1929), and Harrison v. Southern Ry. Co., 229 N.C. 92, 47 S.E.2d 698 (1948)).

Many of the authorities recognize and apply a distinction between cases in which a release is given for a known existing injury, which turn out to be worse than anticipated, and those in which a release is given for known injuries and subsequently injuries then unknown are discovered and found to be quite serious. In the first case, it is held there was no mistake of fact and the release is binding, whereas in the second case there is mistake and the release is not binding. See 48 A.L.R. 1462 et seq. and 71 A.L.R.2d 77 and note at pp. 87 et seq.

The defendant argues that the evidence does not show causal relationship between the injury of December 10, 1959, and the detached retina discovered September,

1960. In the court's view of the case, this point is immaterial here. There is medical testimony both ways. However, of necessity, since the court is of the opinion that the release must be declared null and void, the complainant must file his action on the original cause of action, and in that proceeding must prove by a preponderance of the evidence the detached retina was proximately caused by the collision. The only way the issue could be considered in this suit is for the evidence to show that it could not be causally related to the collision, which is not the case.