## Richmond

HYDELIA COTMAN v. WINFRED WHITEHEAD, ET AL.

December 6, 1968.

Record No. 6794.

Present, All the Justices.

*James A. Eichner* (*Allen, Allen, Allen and Allen,* on brief), for plaintiff in error.

*Robert P. Beaver; Nathan H. Smith* (*Travis W. Poole; Sands, Anderson, Marks & Clarke,* on brief), for defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The question in this case is whether a release executed by the plaintiff barred her from recovering from defendants in this personal injury action.

Hydelia Cotman, plaintiff, brought the action against Nannie Lee Jones, driver of an automobile in which plaintiff was riding, and

against Winfred Whitehead, driver of a truck which was in collision with Mrs. Jones' car, seeking damages for personal injuries alleged to have been sustained by her in the collision.

Mrs. Jones filed a "plea of release" alleging that plaintiff had accepted money in settlement of her claim against Mrs. Jones and had executed a release. Whitehead also filed a "plea of release" on the ground that satisfaction of the claim by and release of Mrs. Jones released him also.

The court by agreement heard the evidence *ore tenus* on the question of the validity of the release and held that plaintiff had not shown a mutual mistake of fact which would invalidate the release. It accordingly entered an order sustaining the pleas and dismissing the action as to both defendants.

To that judgment Mrs. Cotman was granted a writ of error. She contends that the evidence showed a mutual mistake of fact as to the extent of her injuries so that the release should have been set aside; and that even if the release was valid and barred her action against Mrs. Jones, we should change our rule that release of one joint tort-feasor releases all joint tort-feasors, and permit recovery against Whitehead.

The evidence presented at the hearing on the release showed that on April 4, 1966, Mrs. Cotman, a paying passenger, was riding in the front seat of a car being driven by defendant Jones when the car was involved in a collision with a truck being driven by defendant Whitehead. Later that day Mrs. Cotman, who was employed as "a transport aide" at the Medical College of Virginia Hospital, went to the emergency room of that hospital where she was examined, but not X-rayed. She was told, she said, that she "probably just got shook up" in the accident and was given some pills for headache. During the next nine days she took the pills and used some liniment for the pains in her neck. She sought no further medical attention during that period.

On April 13, 1966, she talked at length with Ronald L. Coleman, an insurance adjuster representing Mrs. Jones' automobile insurance carrier. She gave him a statement concerning the accident, which he wrote out and she read and signed it. According to Coleman, Mrs. Cotman told him Mrs. Jones was not at fault in the accident.

He asked Mrs. Cotman if she would like to settle "the case" and she agreed to do so for $35, so he prepared the release on a printed

form as set out below,[1] which she signed. He then prepared a draft in the amount of $35 on Mrs. Jones' insurer which Mrs. Cotman accepted and cashed.

Coleman testified that the $35 was to cover a bill of $5.50 incurred by Mrs. Cotman for treatment at the Medical College Hospital, about $9.50 for a day that Mrs. Cotman told him that she had lost from work, and about $20 for her pain and suffering and inconvenience. Mrs. Cotman testified that she had lost three days from work and so told Coleman; and that Coleman told her that the $35 was to cover her bill at the hospital and three days she was off from work.

Coleman also told Mrs. Cotman that Mrs. Jones had a $500 "medical pay" coverage of which she (Mrs. Cotman) was entitled to avail herself for one year from the date of the accident.

Mrs. Cotman testified that at the time she talked with Coleman, nine days after the accident, she told him that she was having pain in her neck and it was running down her back, and he recommended that she see Dr. Clements, and told her to send the bills to him (Coleman) and they would be paid by Mrs. Jones' insurer up to the limit of the medical payment provision of the insurance policy.

Coleman testified that he asked Mrs. Cotman whether she planned to seek additional medical attention, and she said she did. He then suggested the names of three doctors who were near the hospital and that Clements was Mrs. Cotman's choice.

---

[1] "RELEASE OF ALL CLAIMS

"KNOW YE, That I Hydelia Cotman, an individual For and in consideration of the sum of Thirty-five and 00/100 Dollars ($35.00) to me/us in hand paid by George Washington Jones and/or Nannie Lee Jones the receipt of which is hereby acknowledged, I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge the said George Washington Jones and/or Nannie Lee Jones, his/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators, and any and all other persons, associations and/or corporation, whether herein named or referred to or not, of and from any and every claim, demand, right, or cause of action of whatever kind or nature, either in law or in equity, especially the liability arising from an accident which occurred on or about the fourth day of April, 1966 at or near the intersection of Va. State Rt. # 606 and Va. State Rt. # 5, Charles City County, Va. for which I/We have claimed the said George Washington Jones and/or Nannie Lee Jones to be legally liable, but this release shall not be construed as an admission of such liability.

"IN WITNESS WHEREOF, I/We have hereunto set my/our hand(s) and seal(s) this 13 day of April, 1966.

"READ CAREFULLY BEFORE SIGNING

"Hydelia Cotman (SEAL)
"Witness Ronald L. Coleman"

Mrs. Cotman went to see Dr. Clements. He examined and X-rayed her on April 13, 1966, and reported to Coleman that she had some tenderness in the neck muscles and in the lower spinal region; that he thought she had suffered a mild cervical strain at the time of her accident, from which an uneventful recovery should occur in one to six weeks with no permanent disability "from this relatively mild injury."

Subsequent medical reports from Dr. Clements and another physician indicated that plaintiff's condition was improving gradually. Dr. Clements attributed part of the delay in her recovery to her "extreme obesity". Mrs. Cotman had some physical therapy treatments at the Medical College Hospital and at times wore a back brace. Her bills for treatment amounted to $126.25, which were paid for her under Mrs. Jones' medical policy.

Mrs. Cotman was twenty-nine years of age and had a tenth grade high school education. She testified that she did not read the release before signing it and did not read what was printed on the back of the draft before endorsing and cashing it.[2]

Plaintiff contends that the release signed by her should have been held invalid by the trial court because she and Coleman were operating under a mutual mistake of fact as to the severity of her injuries when the amount of settlement was reached and when she executed the release. She asserted that she did not understand that the paper she signed bearing the title "RELEASE OF ALL CLAIMS" was to release Mrs. Jones, but that she took the $35 to be for the days she lost from work, plus pay for the emergency room on the day of the accident.

She also testified that no fraud, fear or duress of any kind was used at the time she signed the release and that she understood what Coleman said.

Coleman testified that he explained to the plaintiff at the time that this was a complete settlement from the standpoint of Mrs. Jones, and that after she read the statement he had prepared and which she signed, he gave her the release, and as she was signing it he completed the draft for the $35 and gave it to her. He did not notice whether she read the release before she signed it.

Plaintiff argues that her case is controlled by *Seaboard Ice Co. v. Lee*, 199 Va. 243, 99 S.E.2d 721. That was a suit in equity to compel

---

[2] Printed on the back of the draft, above the place for endorsement, was, *inter alia*:

"The payee by endorsing this draft acknowledges full settlement of all claims or accounts arising out of the occurrence referred to on the other side hereof and does hereby release any and all persons having liability therefor."

Lee to abide by his contract releasing the complainant from liability for injuries received in an accident and to enjoin him from prosecuting an action against complainant for damages. The trial court held that the evidence showed that the release was executed through mutual mistake and denied relief. We affirmed the decree because at the time the release was executed it was not known that Lee had suffered any injury in the accident and "equity will not enforce specifically an agreement entered into under misapprehension or mistake of fact." We said:

> "It is difficult to formulate fixed rules relating to the avoidance of a release of a claim for personal injuries on the ground of mistake. There are so many factors to be considered that general rules are likely to be inaccurate or misleading. Each case must be determined under the particular circumstances attending the formulation and execution of the contract. * *" 199 Va. at 251, 99 S.E.2d at 726.

The present case is controlled by the principles stated in *Corbett v. Bonney*, 202 Va. 933, 121 S.E.2d 476. There defendant Corbett negligently operated her car and struck the Bonney car, damaging it and injuring Mrs. Bonney. Later, after discussing the damages sustained in the accident, the Bonneys agreed to accept, in settlement of their claims, $197.96, as covering repairs to the automobile, hospital and telephone charges and future medical treatment if necessary. Thereupon the Bonneys executed a release of all claims against Mrs. Corbett.

Thereafter, Mrs. Bonney sued Mrs. Corbett for damages for her injuries and recovered a verdict and judgment for $5,000. We reversed the judgment on the ground that the release was valid and barred further recovery. There was no evidence, we said, that the plaintiff, Mrs. Bonney, had received any injury other than that diagnosed at the hospital to which she was taken after the accident, and:

> "* * The fact that the treatment of plaintiff's known injuries has been prolonged does not bring her case within the rule permitting avoidance of the release on the ground of mutual mistake. As was said in *Fix* v. *Craighill*, 160 Va. 742, 755, 169 S.E. 598, 'Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of fact as to entitle either party to relief.' " 202 Va. at 940, 121 S.E.2d at 481.

That in substance is the situation with respect to the release here involved. The evidence in the case showed that at the time the release was executed both Mrs. Cotman and the insurance adjuster knew that she had suffered some injury to her neck and back in the accident and that she intended to seek further medical attention. Her medical treatment after she signed the release disclosed no injury of which she and Coleman were unaware at the time of the settlement.

The trial court properly held that there was no mutual mistake which would permit avoidance of the release.

Plaintiff further argues that even if the release is valid so as to bar her action against Mrs. Jones, we should change the rule that the release of one joint tort-feasor releases other joint tort-feasors allegedly liable for the same injury or wrong, so she could maintain the action against the other defendant, Whitehead.

Beginning with *Ruble* v. *Turner*, 2 Hen. & M. (12 Va.) 38, this court has adhered to the strict common-law view that accord and satisfaction with, and the release of, one joint tort-feasor releases all. *Shortt* v. *Hudson Supply, etc., Co.*, 191 Va. 306, 311, 60 S.E.2d 900, 903.

As recently as last year, in *Dickenson* v. *Tabb*, 208 Va. 184, 194, 156 S.E.2d 795, 802-3, the rule and the reason for it were stated again in these words:

"Dismissing or releasing a claim against one tort-feasor does not operate as a release of other joint tort-feasors unless there has been a satisfaction. It is the acceptance of satisfaction which operates to extinguish plaintiff's cause of action against other joint tort-feasors. * *"

We have recognized the conflict of authority on the rule and the criticisms of it, see *Bland* v. *Warwickshire Corp.*, 160 Va. 131, 136, 168 S. E. 443, 444; *Shortt* v. *Hudson Supply, etc., Co.*, *supra*, but we have declined to change the rule, and we decline to do so now.

The judgment of the trial court is

*Affirmed.*