## Richmond

## NATIONWIDE MUTUAL INSURANCE COMPANY V. CYNTHIA V. MUNCY.

April 22, 1977.

Record No. 760182.

Present, All the Justices.

*Jerry K. Jebo; John C. Sheldon (Dalton & Jebo,* on briefs), for plaintiff in error.

*John B. Spiers, Jr. (Spiers, Spiers & Mink,* on briefs), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

The sole question in this appeal is whether the trial court erred in setting aside and declaring void a release executed by

Cynthia V. Muncy, releasing Raymond K. Moore from all claims arising out of an automobile accident.

The accident occurred in the City of Radford on October 1, 1973. After conferences with D. A. Wall, the claims adjuster for Nationwide Mutual Insurance Company, Moore's insurance carrier, Mrs. Muncy on October 3, 1973, executed a release on a Nationwide form supplied by Wall, which provided for payment to her of $1,000 and also payment of all reasonable medical expenses not to exceed $2,000 if incurred by her within one year after the accident.

On June 20, 1974, Nationwide filed in Moore's name a motion for declaratory judgment against Mrs. Muncy seeking to have the trial court declare the release valid and binding and order the dismissal of a personal injury action, arising from the same accident, instituted in the trial court by Mrs. Muncy against Moore. In her response Mrs. Muncy alleged that Nationwide, rather than Moore, was the true party in interest, and that the release was executed by her under mistake of fact, was based upon material misrepresentations of Nationwide reasonably relied upon by her, was lacking in consideration, and was obtained by the "fraud, imposition and duress" of Nationwide. She moved that Nationwide be made a party and the release be annulled. On September 12, 1975, the trial court ordered Nationwide substituted as party plaintiff for Moore, dismissed Moore, and heard the evidence *ore tenus*. Only two witnesses testified, Wall for Nationwide and Mrs. Muncy for herself.

Wall testified that on the morning after the accident he went to a garage to examine the Muncy vehicle, a 1967 Buick, and found Mrs. Muncy and her son-in-law, Tommy Hall, there. All agreed that the car was a total loss. Mrs. Muncy informed Wall that she had been treated by a doctor after the collision. She and Hall went to Wall's office in Christiansburg later in the day and conversed with him about the vehicle, since Mrs. Muncy, who was employed as a cook at Radford College, needed transportation to and from work.

Wall further testified that at the request of Mrs. Muncy and Hall he met them the next day, October 3, 1975, at his office after working hours. They talked about the "blue book" value of the Muncy car, which was $650, and a used car which, Mrs. Muncy and Hall reported, Mrs. Muncy could purchase for $1,050. They discussed settlement of her claims for $1,000, which would

include her lost wages, being $350 in excess of the value of her car. After Mrs. Muncy and Hall ascertained that the replacement car could be purchased for $1,000, Wall submitted a general release form to her which Mrs. Muncy, after reading it and having it explained by Wall, said she could not sign because "she had to go back to the doctor and ... was afraid that something would come up." He then produced and explained another release form which would require payment, in addition to the $1,000, of any medical expenses, not to exceed $2,000, arising within one year from the date of the accident. After she had read it Mrs. Muncy and Wall executed this release, and Wall gave her a copy together with a Nationwide check for $1,000, which Mrs. Muncy subsequently cashed.

A copy of Wall's report to Nationwide dated October 5, 1973, which was introduced into evidence, showed that he informed the company that the settlement included $350 for bodily injury and $650 for property damage. Subsequently, Mrs. Muncy forwarded medical bills to Wall's office, but she never cashed the Nationwide check sent to her in payment of these bills.

At the time the release was executed, according to Wall's testimony, he knew that Mrs. Muncy had lost two days from work because of the accident, and he thought that she was paid $25 per day. He conceded on cross-examination that in his report to Nationwide he had incorrectly stated that Mrs. Muncy had missed three days from work as of the date of settlement. He also conceded that he had failed to complete the report in some respects. He had marked on the report that the bodily injury claim was "pending" because of the possibility that Nationwide would have to pay additional medical bills. He identified the Nationwide check dated November 2, 1973, payable to Mrs. Muncy in the amount of $131.05 for medical bills, which carried on its face the legend, "This is full payment unless otherwise indicated on the stub." Wall conceded that there was nothing otherwise indicated on the stub to show Mrs. Muncy that it was only a partial payment, but he asserted that this was a standard form of check which he used for all purposes.

After Nationwide rested at the conclusion of Wall's testimony, the court took under advisement Mrs. Muncy's motion for summary judgment and proceeded to hear testimony. Mrs. Muncy testified that in the accident her leg was bruised and her back was twisted, for which she received treatment in the

emergency room at the local hospital, and that at the time of trial she was still consulting a physician about her back. The morning after the accident she and her son-in-law, Tommy Hall, went to Harvey's Chevrolet, where Hall had formerly been employed as a mechanic, to look at her wrecked car. They talked to Wall, who happened to be there, about a replacement car. She also informed Wall that she had consulted a doctor. Wall told her to go back to the doctor, and to let him know if she and Hall found a comparable car to replace hers. Later that day they telephoned Wall that they had found a suitable car, and that night they discussed the matter further in his office. The next day, after trying out the car which she contemplated purchasing, she and Hall telephoned Wall and made an appointment to see him in his office after office hours.

At this meeting on October 3, 1975, Wall agreed to pay $1,000 for the replacement car, and Mrs. Muncy and Hall found that the owner would accept this amount. Although Mrs. Muncy denied that there was any discussion of the "blue book" value of her old car, she stated that Wall said that he would have to include her lost wages in the $1,000 payment because he was paying too much for her car. Wall handed her a release form under which, for $1,000, she would release all claims. When she refused to sign because she was having "a problem" with her back, he produced a second form which he said was for $1,000 to replace her car. She did not read this release because it was late and Wall wanted to go to dinner so "she just took him at his word" that it was "kind of like a receipt" for the $1,000 check. Wall told her to send other bills to him, and she later forwarded medical bills, for which she received a check marked "Payment in full." She called Wall's office, and one of the girls told her that the check was good and it would be all right to cash it. She then for the first time read the copy of the release she had signed and consulted an attorney.

Mrs. Muncy, who was 56 years of age and had graduated from high school, said that she read the first release form completely and refused to sign it because she was under the doctor's care and was concerned about her medical bills and "[h]ow much injury" she had. She denied that she read her copy of the signed release until she received the check for medical bills, but conceded that Wall "didn't force" her to sign the release.

At the conclusion of arguments of counsel the trial court, in an oral opinion, stated that "we are not considering this case on the basis of fraud." It was clear from Wall's testimony, the court continued, that he knew that Mrs. Muncy would not release her claim for bodily injury when she refused to sign the first release. It was also clear from her evidence that she relied on Wall when he proffered the second release form, similar to the first, except for the additional provision for medical bills, which released the bodily injury claim "that she would not release in the first instance." The opinion concluded as follows:

"It was in Mrs. Muncy's mind to release only as to the automobile. And Mr. Wall knew that she was releasing him as to everything. And therefore there was no meeting of the minds; there was not a valid agreement. And I set it aside."

Nationwide, appealing the final order entered on October 21, 1975, in which the trial court declared the release to be void, first contends that the trial court's invalidation of the release cannot be sustained on the ground of mutual mistake. We agree.

■ Mrs. Muncy concedes that she had the burden of proving by clear, cogent, and convincing evidence that the release should be set aside. This is true, whether the ground is mutual mistake, *Marshall* v. *Cundiff*, 211 Va. 673, 678, 180 S.E.2d 229, 232 (1971), or fraud, *Corbett* v. *Bonney*, 202 Va. 933, 939, 121 S.E.2d 476, 481 (1961).

■ As the prevailing party in the trial court Mrs. Muncy is, of course, entitled to have the evidence and all reasonable inferences therefrom viewed in the light most favorable to her. Nevertheless, it is uncontradicted that Wall and Mrs. Muncy knew that she had received medical treatment and that she would return to the doctor for further consultation. The trial court found that Mrs. Muncy did not intend to release her bodily injury claim but that Wall knew that the second release which he asked her to sign would effectually release all her claims. This is a finding that negatives mutual mistake, and unilateral mistake alone is an inadequate predicate for rescission of a release. As we pointed out in *Marshall* v. *Cundiff, supra,* although many courts have, in effect, made the releasor's intent alone the determining factor, we disapprove this dilution of the rule that mutual mistake must be based upon mutual intent. Thus, in *Ice Company* v. *Lee*, 199 Va. 243, 99 S.E.2d 721 (1957),

relied upon by Mrs. Muncy, where the evidence showed that both parties intended the release to cover only known out-of-pocket expenses, and not unknown injuries, we affirmed the ruling of the trial court and held that, because of mutual mistake, the release should not be enforced to defeat the releasor's personal injury action.

In *Corbett* v. *Bonney*, 202 Va. 933, 121 S.E.2d 476 (1961), however, where both parties knew that further treatment of the releasor's injuries would be required, and a small sum was included for medical treatment, we reversed the trial court and held as a matter of law that there was no mutual mistake of fact on which invalidation of the release could be grounded. We held that the parties had bargained to release known injuries, regardless of their unknown extent. Again, in *Valentine* v. *Jester*, 210 Va. 83, 168 S.E.2d 94 (1969), we reversed the trial court and upheld the validity of a release similar in form to the one in the present case. In that case, when the release was executed, providing for payment of a small sum in cash and not exceeding $2,000 in future medical expenses, the releasor had an injury the nature and extent of which were known. We held that the evidence established that the parties intended the release to embrace all claims for injuries, even though they did not know that the attending doctor would subsequently change his opinion and say that the injuries were permanent rather than temporary. To the same effect is *Harvey* v. *Robey*, 211 Va. 234, 176 S.E.2d 673 (1970), in which we reversed the trial court and upheld a release which included $1,000 for future medical expenses, when it was apparent that the parties intended the release to cover any unknown consequences of a known injury.

In the present case, the record shows that it was the intent of Wall, if not of Mrs. Muncy, that she would release her personal injury claim. Invalidation of the release on the ground of mutual mistake, therefore, is not supported by the evidence which shows, at most, unilateral mistake on the part of Mrs. Muncy.

■ Nationwide further contends that the trial court erred in not deciding the case on the basis of fraud, but that the evidence is insufficient as a matter of law to establish fraud. Mrs. Muncy argues that, although the trial court in its oral opinion expressly eliminated fraud as an issue, it nevertheless found from the evidence that Wall obtained the release by fraud, and this finding, when the evidence is viewed in the light most favorable

to her, should be upheld. Thus, Mrs. Muncy in effect suggests that the court reached the right result for the wrong reason.

We do not construe the trial court's opinion to constitute a finding of fraud after the court's explicit disavowal of any consideration of fraud. We construe the finding to be only that Mrs. Muncy intended the release not to include her personal injury claim, whereas Wall intended the release to cover all claims as specified therein, so that there was no meeting of the minds.

The evidence bears some similarity to the evidence in *Corbett* v. *Bonney, supra,* where we held as a matter of law that there was no fraud in the procurement of the release. There the releasors, Bonney and his wife, testified that they signed the release without reading it and that it was not discussed as a release. Bonney testified that they signed because the insurance adjuster said that it was to get Mrs. Bonney out of the hospital and to get Bonney's car, which we held were not valid reasons. There was also evidence that the adjuster stated that the release was just a routine formality that was always required, which we held was not fraud or misrepresentation of a material fact.

The statement attributed to Wall by Mrs. Muncy that the release which she signed was "kind of like a receipt" to enable her to purchase a car falls in the same category. Here also, as in *Corbett,* the releasor has the ability and the opportunity to read the release, and it was her duty to do so before signing it. Her excuse that Wall wanted to leave for dinner is inadequate. As we said in *Corbett,* she "cannot invoke her own heedlessness to discredit her solemn release, and call such heedlessness another person's fraud." 202 Va. at 939, 121 S.E.2d at 481. This is especially true in this case, where Mrs. Muncy carefully read and rejected the first release form because it would have released all her claims and she was concerned, she said, about future medical bills and the extent of her injury. The release which she signed met her stated objection by providing for payment of her medical expenses up to $2,000 if incurred within one year, thus covering substantial medical bills that might arise if her injuries were more extensive than anticipated. As in *Valentine* v. *Jester, supra,* and *Corbett,* the parties knew that the releasor would require future medical treatment and the release made provision therefor.

There is no evidence in the record that Wall exercised any duress or undue influence over Mrs. Muncy. Indeed, it appears that Mrs. Muncy and her son-in-law, Hall, initiated and aggressively pursued the settlement negotiations with Wall, and that Hall, who did not testify as a witness at trial, was present throughout the negotiations and at the time the release was executed.

We hold as a matter of law that Mrs. Muncy has failed to establish by clear, cogent, and convincing evidence that Wall obtained the release from her through the exercise of fraud or by misrepresentation of a material fact. Since the evidence shows that there was no mutual mistake, we will reverse the final order of the trial court and enter judgment here for Nationwide.

*Reversed and final judgment.*